STATE of Tennessee, Appellee,

v.

**Arthur J. AKINS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 2, 1993.

Kevin W. Shepherd, Asst. Public Defender, Maryville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, Michael L. Flynn, Dist. Atty. Gen., and Phillip H. Morton, Asst. Dist. Atty. Gen., Maryville, for appellee.

## OPINION

WHITE, Judge.

The appellant, Arthur J. Akins, was driving an automobile in which his wife was killed when the vehicle left the roadway and struck a tree. He was indicted on charges of vehicular homicide, driving under the influence of an intoxicant, and driving on a revoked driver's license. Akins, an elderly man in poor health, entered several guilty pleas including a best interest plea on the vehicular homicide. The trial court accepted the pleas, but at the sentencing hearing refused to accept the sentence recommended by the state on the vehicular homicide charge. Akins withdrew his plea on that charge and the case went to trial. At trial, the jury returned a verdict of guilty. The trial court sentenced appellant to serve four years.

Appellant presents two issues on appeal:
1. Whether double jeopardy prohibited the state from trying him on vehicular homicide charges in light of the plea agreement?
2. Whether the right to a fair and impartial jury was defeated by a biased jury foreperson?

This court affirms the trial court's ruling allowing the defendant to withdraw his guilty plea at the sentencing hearing and holds that the double jeopardy provision is not implicated. The case is reversed, however, based on improper juror conduct, and is remanded for a new trial.

### I.

On November 23, 1990, the car which Akins was driving swerved off Highway 411 in Blount County and struck a tree. Akins' wife was dead when police arrived, and Akins was seriously injured. On September 17, 1991, Arthur Akins entered a best interest plea to a charge of vehicular homicide.[1] The state recommended that Akins receive a sentence of four years served in split confinement with no more than one hundred twenty days of continuous confinement and the balance of the sentence to be served as determined by the trial court at a sentencing hearing. After the appropriate colloquy required by Rule 11 of the Tennessee Rules of Criminal Procedure and *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977), the trial judge addressed Akins:

THE COURT: Now, another important question, do you understand that the agreement that your lawyer and the State have about this, I don't have to follow it. When we have a sentencing hearing, I will hear the proof, and I can decide to do something different if I think that's what ought to happen. Do you understand that?

MR. AKINS: Yes, sir.

The Court then accepted the guilty plea.

At the sentencing hearing, the trial judge announced that he would not accept the state's sentencing recommendation on the vehicular homicide charge. Although the state argued that the plea was a non-binding plea under Rule 11(e)(1)(B), the court elected to treat the plea as a contingent one under Rule 11(e)(1)(C)[2] and in accordance with the ABA Standards For Criminal Justice.[3]

Appellant argues that the trial court accepted the guilty plea in open court and by written order.[4] Consequently, he claims that

---

1. Akins, who was sixty-nine years old at the time of the accident, had two previous DUI convictions and a history of alcoholism. His driver's license was revoked in 1987 and never reinstated. At the time of this best interest plea, Akins also pled guilty to a third offense DUI, two charges of driving on a revoked license, and failure to yield to an emergency vehicle.

2. The trial judge observed that he had not advised Akins of his inability to withdraw the plea in the event of rejection of the recommendation. Consequently, the judge opted to treat the plea as one under Rule 11(e)(1)(C) and allowed its withdrawal.

3. The ABA Standards provide for contingent pleas in situations in which the plea agreement is binding and in situations in which the court cannot accept the sentence but has previously concurred in the plea "tentatively or fully." ABA, Standards For Criminal Justice, Pleas of Guilty. 14–3.3.

4. On September 17th, two days after the hearing, the court signed an order stating in pertinent part:

    Came the District Attorney, who prosecutes for the State, and Defendant in his own proper person and by counsel, who being arraigned upon the indictment exhibited against him for

the double jeopardy clause prohibits the state from trying him. The state responds that jeopardy did not attach since the court only conditionally accepted the plea and that the withdrawal of the plea constituted a waiver of double jeopardy rights.

While an accepted guilty plea is conclusive, "the entry of a plea of guilty in and of itself is not a bar to a subsequent prosecution for the same or higher offense without some judicial action upon the plea in a judicial sense." *State v. Sluder*, 493 S.W.2d 467, 470 (Tenn.), *cert. denied*, 414 U.S. 876, 94 S.Ct. 85, 38 L.Ed.2d 121 (1973); *Brooks v. State*, 187 Tenn. 67, 213 S.W.2d 7 (1948), *cert. denied*, 340 U.S. 837, 71 S.Ct. 21, 95 L.Ed. 614 (1950). In essence, appellant argues that the signed order accepting the guilty plea, constituted judicial action. We disagree under these facts.

▇▇ Jeopardy attaches on a guilty plea when the plea is unconditionally accepted by the court. *State v. Todd*, 654 S.W.2d 379, 383 (Tenn.1983). Here the trial court did not unconditionally accept the plea agreement and sentence Akins. Rather, the judge exercised his discretion to defer the sentencing decision until after considering the presentence report. Tenn.R.Crim.P. 11(e)(2). Once the report was filed, the court determined that it could not accept the agreement and made the efficient and fair decision to allow withdrawal of the plea.[5]

Neither the transcript or the order reflect judicial action unconditionally accepting the guilty plea under all the facts present in this

case. Thus, jeopardy did not attach. The trial, following the withdrawal of the plea, does not violate Akins' double jeopardy rights.[6]

## II.

Secondly, appellant argues that he was deprived of a fair and impartial jury because of juror misconduct during voir dire. One of the last jurors seated, Janet Hathaway[7], had previously worked as a probation officer, a DUI probation counselor, and at Peninsula Hospital in an adolescent alcohol and drug rehabilitation program. Hathaway did not disclose any of this information during voir dire despite persistent, straightforward questioning by both counsel.

Before Hathaway was called to the box, defense counsel asked:

Has anyone here ever worked with or been closely associated with people who are recovering alcoholics or people who may may [sic] be alcoholics? You've had to counsel with them or be around them on basis where you see how they act and you see the effects of alcohol, anyone like that at all?

After the first peremptory challenges were exercised (but again before Hathaway was seated), the assistant district attorney asked:

Have any of the new six faces to come up had the type of personal, direct or indirect contact with a DUI case or with a vehicular homicide case that we asked about earlier?

vehicular homicide and for plea thereto says he is guilty of vehicular homicide; and the Defendant having expressly waived a trial by jury and having asked the Court to hear the evidence and fix punishment, and the District Attorney having agreed to this;

Thereupon, after having heard the evidence, the plea agreement, and from the entire record of this case, the Court accepts the plea of guilty to vehicular homicide.

5. By its terms, the plea agreement was, at best, partially binding (four years, no more than 120 days continuous confinement) and partially nonbinding. *See* Tenn.R.Crim.P. 11, Comments to 1984 Amendment. The judge's decision to allow withdrawal was sound and reasonable under these circumstances and in accordance with the ABA Standards which provide that "before sentence, the court should allow the defendant to

withdraw the plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." ABA Standards for Criminal Justice, Guilty Pleas 14–2.1(a).

6. While our holding removes the need to consider the state's waiver theory, we note that under some circumstances, defendant's participation in a plea agreement can constitute a waiver of a double jeopardy claim. *See United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).

7. Hathaway was not on the initial panel. She was, however, a member of the venire and was in the courtroom during all the questioning. She also had served on a jury the previous day.

The state repeated this inquiry following the third exercise of peremptory challenges and after Hathaway was seated in the box:

Have any of the six new ones that have come up had a personal experience with a drunk driving case or vehicle homicide case or a wreck involving alcohol, or arrested for DUI ... anything of that nature? We kind of run through all of those, but did any of that come to mind as we were asking earlier? ...

Anybody else on those questions that were related to alcohol and driving and so forth? Do all of you know of any reason that may come to mind as you've sat here for about the last hour that you cannot be fair to both sides....

Defense counsel alluded to the lengthy jury deliberations of the night before:

For those of you that were here last night as long as I was, will you all promise me that you won't hold that against me, that we all were here until ten last night?

Defense counsel then specifically asked:

Those of you newly seated.... [a]re any of you formerly from law enforcement ...?

During the questioning, numerous potential jurors described their experiences with alcoholics and drunk drivers. One had attended a meeting of Students Against Drunk Driving, another was employed by the Department of Human Services as an eligibility counselor; and yet another had been a police officer but had never investigated a vehicular homicide case. Hathaway made no response, was impaneled as a juror[8], and was elected foreperson.

After conviction, a juror advised defense counsel about statements made by Hathaway during deliberation. Counsel called Hathaway in support of his motion for new trial. She acknowledged having previous experience with alcoholics which she did not reveal because it was work experience and not "personal." Further, Hathaway admitted that she failed to disclose her work with DUI offenders and alcoholics. She did not consider probation work to be "law enforcement" so she did not respond to law enforcement questions. Finally, Hathaway acknowledged that she discussed her work experience with other jurors, told them she "knew what alcoholics were like," and helped them understand an attorney's trial tactics.[9]

■ Against this factual background we evaluate Akins' claim that he was denied his constitutional right to a fair and impartial jury. Article 1, Section 9 of the Tennessee Constitution, like the Sixth Amendment to the United States Constitution, provides the accused with the right to trial "by an impartial jury." The jury selection process must be carefully guarded to ensure that each defendant has a fair trial and that the verdict is determined by an impartial trier of fact. The Tennessee Constitution guarantees every accused "a trial by a jury free of ... disqualification on account of some bias or partiality toward one side or the other of the litigation". *Toombs v. State,* 197 Tenn. 229, 270 S.W.2d 649, 650 (1954).

Bias in a juror is a "leaning of the mind; propensity or prepossession towards an object or view, not leaving the mind indifferent; [a] bent; [for] inclination." *Durham v. State,* 182 Tenn. 577, 188 S.W.2d 555, 559 (1945). Jurors who have prejudged certain issues or who have had life experiences or associations which have swayed them "in response to those natural and human instincts common to mankind," *id.* 188 S.W.2d at 559, interfere with the underpinnings of our justice system.

The essential function of voir dire is to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel. 47 Am.Jur.2d, Jury § 195 (1969). Traditionally, our state had shown great respect and deference to the voir dire process. Our leg-

---

8. Hathaway's conduct implies that she knew that her background was significant. Before the trial began, she told the bailiff of her background. He responded, "it's too late now, honey." We note that this entire tragedy could have been avoided had the bailiff or the juror told the trial judge since an alternate juror had been seated.

9. Specifically, Hathaway "[brought] it to their attention ... why a ... defendant's lawyer would ... say that's all, and not question any further and not let anybody else testify...."

islature had given parties in criminal and civil cases "an absolute right to examine prospective jurors" Tenn.Code Ann. § 22–3–101 (1980 Repl.). Our courts, both civil and criminal, have long recognized the importance of the voir dire process and have zealously guarded its integrity. *See e.g., Hyatt v. State,* 221 Tenn. 644, 430 S.W.2d 129 (1967); *Toombs v. State,* 270 S.W.2d 649 (Tenn.1954); *Durham v. State,* 188 S.W.2d 555 (Tenn. 1945); *Owen v. Arcata Graphics/Kingsport Press,* 813 S.W.2d 442 (Tenn.App.1990), *perm. to appeal denied,* (Tenn.1991); *State v. Furlough,* 797 S.W.2d 631 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1990); *State v. Pender,* 687 S.W.2d 714 (Tenn.Crim.App. 1984), *perm. to appeal denied,* (Tenn.1985); *Tennessee Farmers Mut. Ins. Co., v. Greer,* 682 S.W.2d 920, 924 (Tenn.App.), *perm. to appeal denied,* (Tenn.1984); *State v. Taylor,* 669 S.W.2d 694 (Tenn.Crim.App.1983), *perm. to appeal denied,* (Tenn.1984). Since full knowledge of the facts which might bear upon a juror's qualifications is essential to the intelligent exercise of peremptory and cause challenges, jurors are obligated to make "full and truthful answers ... neither falsely stating any fact nor concealing any material matter." 47 Am.Jur.2d, Jury § 208 (1969).

■ Tennessee follows the common-law rule by which challenges of juror qualifications fall within two distinct classes.[10] Those challenges based on defects in qualifications such as alienage or statutory requirements are called propter defectum, which, literally translated means "on account of defect." *See* Black's Law Dictionary 1098 (5th ed.1979). The other class of challenges, propter affectum ("on account of prejudice"), *id.,* is based on bias or prejudice "actually shown to exist or presumed to exist from circumstances." *Durham v. State,* 188 S.W.2d 555, 559 (Tenn. 1945) (quoting 1 Bouvier's Law Dictionary

451 (Rawle's 3d rev. 8th ed. (1914)). Propter defectum challenges must be made prior to verdict, but propter affectum challenges may be made after verdict. *State v. Furlough,* 797 S.W.2d 631, 652 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1990). Thus, when a juror conceals or misrepresents information tending to indicate a lack of impartiality, a challenge may be made as here in a motion for new trial.

■ The state contends that jury conduct may be raised only in the context of Rule 606(b) of the Tennessee Rules of Evidence. That rule bars juror testimony and affidavits concerning jury deliberations but permits testimony and affidavits pertaining to extraneous prejudicial information, outside influence, and agreed quotient verdicts. Tenn.R.Evid. 606(b). The rule is an evidence rule and not a rule of substantive law. N. Cohen, D. Paine, S. Sheppeard, Tennessee Law of Evidence § 606.2 (1990). Additionally, Rule 606(b) bars testimony as to "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind." *Id.* It does not apply to testimony about voir dire [11] and does not foreclose a challenge on the ground of propter affectum.

■ After establishing that the challenge may be maintained, a defendant bears the burden of providing a prima facie case of bias or partiality. *See State v. Taylor,* 669 S.W.2d 694, 700 (Tenn.Crim.App.1983), *perm. to appeal denied,* (Tenn.1984). When a juror willfully conceals (or fails to disclose) information on voir dire which reflects on the juror's lack of impartiality, a presumption of prejudice arises. *Durham v. State,* 188 S.W.2d 555, 559 (Tenn.1945). Silence on the juror's part when asked a question reasonably calculated to produce an answer is tantamount to a negative answer. 47 Am.Jur.2d § 208 (1969) (counsel has right to rely on

---

**10.** Actually four classes exist but two of those, propter honoris respectum (on account of rank) and propter delictum (on account of conviction) are not relevant here.

**11.** Hathaway's testimony pertained to her responses on voir dire, her anger about being selected as a juror, and statements she made to the jury about her work experiences and her understanding of trial tactics. While the latter state-

ments were "during the course of deliberations" they relate to "the issues of extraneous prejudicial information" and "outside influence" and are specifically admissible. Tenn.R.Evid. 606(b). *See* Tennessee Law of Evidence, *supra,* at § 606.2 ("[The rule] may even [allow] consideration of information known personally to jurors but not presented in *court.*")

silence as negative answer); *see Hyatt v. State*, 430 S.W.2d 129, 130 (Tenn.1967) ("[j]uror ... by his silence ... acknowledged"). Therefore, failure to disclose information in the face of a material question [12] reasonably calculated to produce the answer [13] or false disclosures give rise to a presumption of bias and partiality, *Hyatt v. State*, 430 S.W.2d 129 (Tenn.1967); *Toombs v. State*, 270 S.W.2d 649 (Tenn.1954); *Durham v. State*, 188 S.W.2d 555 (Tenn.1945), "the theory being that a prejudicial bias has been implanted in the mind which will probably influence the judgment." 188 S.W.2d at 558.

In *Durham v. State* a juror, when asked about his previous "court experience," failed to reveal that he was the prosecuting witness in a similar case which had been retired. The Tennessee Supreme Court reversed the conviction, asking rhetorically: "Does there not arise on the facts above shown a legal presumption of the want of that impartiality which our constitutional requirement contemplates?" *Durham v. State*, 188 S.W.2d 555, 558 (Tenn.1945).[14]

In *Hyatt v. State*, a juror had previously received a search warrant for defendant's residence. Because he knew defendant by another last name he did not recognize the connection until another juror used the defendant's nickname during deliberations.[15] The Supreme Court reversed the conviction because "it must be presumed that [the juror's] prejudices enter into and become a part of the result." *Hyatt v. State*, 430 S.W.2d 129, 130 (Tenn.1967).[16]

While our court has most recently refused relief in post-verdict propter affectum challenges, those cases have turned on specific facts which negate reversal. *State v. Furlough*, 797 S.W.2d 631 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1990) (casual relationship, case reversed on other grounds); *State v. Pender*, 687 S.W.2d 714 (Tenn.Crim.App.1984), *perm. to appeal denied*, (Tenn.1985) (question not asked, no concealment, not implied bias by nature of profession); *State v. Taylor*, 669 S.W.2d 694 (Tenn.Crim.App.1983), *perm. to appeal denied*, (Tenn.1984) (no record of proof offered to establish relationship, no false answer or concealment, not inherently prejudicial relationship); *Clariday v. State*, 552 S.W.2d 759 (Tenn.Crim.App.1976), *cert. denied*, (Tenn. 1977) ("perfunctory" question, no concealment, trivial, not inherently prejudicial rela-

---

**12.** The question must be material and one to which counsel would reasonably be expected to give substantial weight. Insignificant nondisclosures will not give rise to a presumption of prejudice. *See State v. Furlough*, 797 S.W.2d 631, 653 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1990); *Clariday v. State*, 552 S.W.2d 759, 771 (Tenn.Crim.App.1976), *perm. to appeal denied*, (Tenn.1977).

**13.** The test is whether a reasonable, impartial person would have believed the question, as asked, called for juror response under the circumstances. Thus, in *State v. Pender* when neither side asked whether any juror worked in law enforcement, the failure to volunteer the information did not amount to concealment. *State v. Pender*, 687 S.W.2d 714, 718 (Tenn.Crim.App. 1984), *perm. to appeal denied*, (Tenn.1985) (also relying on lack of inherent prejudice on basis of membership in particular association). Likewise in *State v. Taylor*, 669 S.W.2d 694, 700 (Tenn. Crim.App.), *perm. to appeal denied*, (Tenn.1984) and *Clariday v. State*, 552 S.W.2d 759, 771 (Tenn. Crim.App.1976), *cert. denied*, (Tenn.1977), no implied prejudice arose when jurors failed to disclose information in "absence of questions calculated to produce specific answers." *Taylor*, 669 S.W.2d at 700; *contra Toombs v. State*, 270 S.W.2d 649, 650 (Tenn.1954).

**14.** Other courts have been more direct. In *Toombs v. State*, the Tennessee Supreme Court stated that a juror's failure to reveal that he was the first cousin of the prosecutor's wife when asked if he knew "any reason" he could not be fair "almost forces the conclusion that he was animated by an ulterior motive in remaining silent, and that this ulterior motive stemmed from a partiality in favor of the prosecution and, by the same token, a bias against these defendants." 270 S.W.2d at 651.

**15.** *Hyatt* makes it abundantly clear that intent is not dispositive of the issue. *But see State v. Furlough*, 797 S.W.2d 631, 653 (Tenn.Crim. App.), *perm. to appeal denied*, (Tenn.1990). The one case that has referred to intent as a factor, *Furlough*, involved a number of other factors and notably was reversed for a new trial on other grounds. 797 S.W.2d at 653 ("we acknowledge that the problem will not likely re-occur upon retrial.").

**16.** *Hyatt* establishes that the juror's later testimony that the matter did not affect the juror is of little consequence. 430 S.W.2d at 130 ("[j]uror ... said these facts did not in any way influence him in considering these verdicts.").

tionship). Additionally, our pronouncements have involved relationships or associations only, either professional or personal, and have not concerned jurors with specific experiences directly relevant to the matter before them. When propter affectum challenges have arisen in that context our civil counterpart has faithfully followed the Supreme Court mandate. *Owen v. Arcata Graphics/Kingsport Press,* 813 S.W.2d 442 (Tenn. App.1990), *perm. to appeal denied,* (Tenn. 1991) (juror reveals only partial litigation history); *see also Tennessee Farmers Mut. Ins. Co. v. Greer,* 682 S.W.2d 920, 924 (Tenn. App.), *perm. to appeal denied* (Tenn.1984) (juror's son and witness worked together).

■ Hathaway failed to respond to direct, straightforward questions asked on voir dire which dealt with highly material matters relevant to the issues in the case on trial. Counsel excused other jurors who revealed related life experiences and had a remaining peremptory challenge to excuse Hathaway had the court failed to sustain a challenge for cause. Hathaway realized the significance of her experiences yet failed to disclose them and then used them to counsel the jurors about extraneous matters. Her failure to disclose is inexcusable, and in light of all the circumstances, under our Supreme Court precedent, it may be presumed that she was unable to act impartially in rendering a verdict.

Realizing that a presumption of bias may in some cases be dispelled by an absence of actual partiality, we hasten to add that, under the facts here, we need not rely on the mere presumption of bias. Hathaway was asked specific questions by both counsel regarding experience involving alcoholics and law enforcement.[17] Other jurors understood the questions and responded appropriately. Hathaway, however, stood mute. She failed to respond completely and truthfully to voir direct questions and then discussed with the jury the very matters she had failed to disclose. The totality of these circumstances suggests that extraneous and prejudicial in-

formation may have been provided to the jury and raises a reasonable doubt as to the impartiality of the verdict. The proof in this case goes far beyond establishing a mere presumption of bias. The appellant has demonstrated actual prejudice.

The integrity of the voir dire process depends upon the venire's free and full response to questions posed by counsel. When jurors· fail to disclose relevant, potentially prejudicial information, counsel are hampered in the jury selection process. As a result, the defendant's right to a trial by a fair and impartial jury is significantly impaired.

From a practical standpoint, unless there is some assurance that jurors will respond fully and completely to questions put to the panel as a whole, the right to exercise peremptory challenges will be chilled. Attorneys will elect to pursue individual questioning of each potential juror at great loss of time to the courts and great expense to the public and the parties. Further, we must demand of all participants in the justice system appropriate candor and conduct if the system itself is to maintain a position of dignity and respect. *See* Code of Judicial Conduct, Canon 1 (maintaining integrity of judiciary).

We hold that when a juror's response to relevant, direct voir dire questioning, whether put to that juror in particular or to the venire in general, does not fully and fairly inform counsel of the matters which reflect on a potential juror's possible bias, a presumption of bias arises. While that presumption may be rebutted by an absence of actual prejudice, the court must view the totality of the circumstances, and not merely the juror's self-serving claim of lack of partiality, to determine whether the presumption is overcome. Moreover, when the presumed bias is confirmed by the challenged juror's conduct during jury deliberations which gives rise to the possibility that improper extraneous information was provided to the jury, actual prejudice has been demon-

---

17. Counsel asked repeatedly whether the prospective jurors had been involved in law enforcement. Hathaway remained silent. When asked whether she considered a probation officer to be part of law enforcement at the motion for new trial hearing, she responded, "Well, it is, but...."

strated. Our commitment to the sanctity of the jury system and its freedom from suspicion of bias and prejudice compels that we reverse and remand this case for a new trial.

SCOTT, P.J., and DWYER, J., concur.