IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 7, 2003

## STATE OF TENNESSEE v. CHRISTOPHER K. KNIGHT

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8015     C. Creed McGinley, Judge**

_____

**No. W2001-02995-CCA-R3-CD  - Filed February 27, 2003**

_____

A Hardin County jury convicted the defendant of two counts of aggravated assault. On appeal, he contends: (1) the trial court erred by refusing to grant a mistrial during jury voir dire; (2) the trial court erred in denying the defendant's motion for new trial based on alleged juror misconduct; and (3) the evidence was not sufficient to support his convictions. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Chadwick G. Hunt, Savannah, Tennessee, for the appellant, Christopher K. Knight.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; G. Robert Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

On August 18, 2000, the defendant and co-defendant Clifford Balentine, armed with baseball bats, and co-defendant Sammy Childers, armed with a pistol, entered Rusty Parrish's mobile home where they found victims Pam Brown and Derrick Benson alone. The victims testified Sammy Childers pointed the pistol at them and demanded to know the whereabouts of Rusty Parrish. The victims told the men they did not know Parrish's location. Before the men left, Clifford Balentine used a baseball bat to repeatedly strike Derrick Benson in the head and to strike Pam Brown once on the back. The defendant and his co-defendants were charged with aggravated burglary and two counts of aggravated assault. The jury acquitted them of aggravated burglary, but convicted them of the aggravated assaults of Brown and Benson.

# I. DENIAL OF MISTRIAL

During jury voir dire, one of the potential jurors stated he knew the defendant and explained that one of his job responsibilities was to chair a disciplinary committee for the school system where the defendant was a student. He further indicated his relationship with the defendant had no bearing on his ability to be fair. The defendant moved for a mistrial on the basis that the potential juror's comments inferred the defendant was the subject of school discipline. The trial court denied the motion, stating the potential juror's comments were not an "indication of criminal behavior or anything," and "a lot of us might have been subjected to that at one time." The defendant argues the prospective juror's statements tainted the jury pool by indicating the defendant had discipline problems.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Brown, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000).

Unless there is evidence the jury which heard the case was prejudiced or biased due to comments made by a prospective juror during voir dire, such comments are not grounds for a mistrial. State v. Brown, 795 S.W.2d 689, 696 (Tenn. Crim. App. 1990). In the instant case, the defendant's argument is based on speculation that the potential juror's statements prejudiced the jury against the defendant. We agree with the trial court's comments and cannot conclude the trial court abused its discretion in denying the defendant's request for a mistrial. This issue is without merit.

# II. DENIAL OF NEW TRIAL BASED ON ALLEGED JUROR MISCONDUCT

During voir dire, the trial court identified victim Derrick Benson to the prospective jurors. Later, the trial court asked potential jurors, including juror Tina Arnold, whether any of them had a "close acquaintanceship" with any of the people involved in the case such that it might affect their ability to be fair. Arnold did not respond and was subsequently selected as a member of the jury which tried the defendant.

At the hearing on the defendant's motion for a new trial, Arnold testified she was acquainted with Derrick Benson prior to trial; that Benson was the best man at a friend's wedding; and that, on one occasion, they were together on a friend's boat. Arnold explained that while she and Benson were together on the boat, their only conversation was basically "Hi. How are you?" She denied she was "good friends with him." She stated she and Benson did not discuss the case, and that she did not share information regarding her acquaintance with Benson with the other jurors. The trial court found no evidence of juror misconduct and denied the defendant's motion for a new trial. The defendant maintains Arnold's silence regarding her relationship with Derrick Benson entitles him to a new trial.

The burden is on the defendant to establish a prima facie case of juror bias or partiality. State v. Akins, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). There is a presumption of prejudice if a juror willfully conceals or fails to disclose information on voir dire which reflects on the juror's lack of impartiality. *Id.* However, no such presumption of prejudice arises where the questions posed to potential jurors were not calculated to produce the undisclosed information. *See* State v. Taylor, 669 S.W.2d 694, 700 (Tenn. Crim. App. 1983).

In the instant case, the questions posed to the jurors related to whether any of them had a close acquaintance with the persons involved in the case which would have affected their ability to be impartial. This court has recently addressed the same factual and legal issue in the direct appeal of co-defendant Sammy Childers and found it to be without merit. *See* State v. Sammy D. Childers, No. W2002-00006-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 69, at *8 (Tenn. Crim. App. Jan. 30, 2003, at Jackson). Likewise, we conclude the evidence supports the trial court's finding that there was no juror misconduct. The trial court did not err in denying the defendant's motion for a new trial.

### III. SUFFICIENCY OF THE EVIDENCE

The indictment charged the defendant with the aggravated assaults of Derrick Benson and Pam Brown "by intentionally or knowingly causing [the victim] to reasonably fear imminent bodily injury by the use or display of a deadly weapon, to wit: a pistol and/or baseball bat." The defendant argues that the state failed to prove he "intentionally or knowingly" placed the victims in reasonable fear of imminent bodily injury. We disagree.

Great weight is given to the jury verdict in a criminal trial, and it accredits the state's witnesses and resolves all conflicts in the state's favor. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. Bigbee, 885 S.W.2d at 803; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Furthermore, a guilty verdict replaces the presumption of innocence with a presumption of guilt which appellant must overcome on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

At trial, the victims testified the defendant entered the mobile home wielding a baseball bat. He accompanied Sammy Childers, who was carrying a pistol, and Clifford Balentine, who was also armed with a baseball bat. Pam Brown stated the defendant and his companions were "all carrying on and wanting to know where [Rusty Parrish] was." Both victims testified Childers pointed the pistol at them while questioning them about the location of Parrish. Derrick Benson testified that all three of the men began walking toward them after Benson denied knowing Parrish's location. According to the victims, the defendant said, "Do you know who you're messing with?" During the incident, co-defendant Clifford Balentine used a baseball bat to strike the victims.

We conclude the state's proof that the defendant was armed with a baseball bat; that he said, "Do you know who you're messing with?"; and that he acted in conjunction with his co-defendants as they moved menacingly toward the victims was sufficient to support the jury's finding that the defendant, while displaying a deadly weapon, intentionally or knowingly caused the victims to fear imminent bodily injury.  This issue lacks merit.

We affirm the judgments of the trial court.

_____
JOE G. RILEY, JUDGE