IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 15, 2004 Session

## TONY IVENS  v.  STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Monroe County**
**No. 01-283     Carroll Ross, Judge**

---

**No. E2003-02216-CCA-R3-CD - Filed September 8, 2004**

---

Defendant, Tony Ivens, appeals the trial court's denial of his motion for new trial.  Following a jury trial, Defendant was convicted of sexual battery.  Defendant was fined $3,000 and sentenced to serve two years with all but 90 days to be suspended and served on probation.  Defendant filed a motion for new trial or mistrial, alleging that one of the jurors failed to disclose during *voir dire* that she was related to a staff member of the Monroe County Sheriff's Department.  The trial court denied the motion, and Defendant appeals.  After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Charles G. Currier, Knoxville, Tennessee, for the appellant, Tony Ivens.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Jon Chalmers Thompson, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Defendant challenges his conviction on the ground that the jury foreperson, Audrey Sampson, failed to disclose during *voir dire* that she was the daughter of an employee of the Monroe County Sheriff's Department.

*Voir Dire*

During the *voir dire* examination, the trial court instructed the prospective jurors as follows:

If you have a response and you're in the audience, you let us know by raising your hand. If you're toward the back of our jury panel today, we may not pursue your response at that time, because your chances, as you get farther back, are less that you'll get into the actual jury box. But let us know that you have a response, and we may ask you to hold that response until and if you get into the witness stand, or the jury box, and pursue it at that time.

The assistant district attorney general asked the jury pool the following questions:

Now, I don't know if you all have had any dealings with [defense counsel] when he's had anything to do legally down here or not. Is there anything about [defense counsel] in the past or present that would cause anybody a problem, one way or the other?

(NO AUDIBLE RESPONSE).

Or with the law enforcement? . . . . Does anybody have a problem with the sheriff's department, or with law enforcement in general that would cause you a problem in being fair to both sides today? . . . .

The assistant district attorney general again inquired about prospective jurors' associations with people in law enforcement:

And I guess last, this morning's catch-all question – and I'm sure a lot of you all know people in law enforcement. You may know other attorneys who do defense work. Is there anything that you can think of that would cause you a problem in being fair to both sides today? The defendant's entitled to a fair trial, and so is the State. Can anybody think of anything? Thank you, ladies and gentlemen.

Defense counsel also questioned the prospective jurors about their relationships with any people in law enforcement:

Okay. Now do any of you have any kinfolk, either by blood or marriage, to people who work for law enforcement, who are perhaps police officers or sheriff's deputies? Not necessarily here in Monroe County, or who work for one of the many agencies of the federal and state governments.

(NO AUDIBLE RESPONSE).

Okay. For those of you in the back who said that, if testimony comes in today from a law enforcement officer, would that be something you would be more inclined to accept as believable, than testimony from anybody else who might happen to come in? Because you know these people personally.

(NO AUDIBLE RESPONSE).

During jury deliberations, a court officer informed the trial court that one of the jurors was related to an officer of the Monroe County Sheriff's Department. The following discussion was had:

[Trial court]: Now for the record, counsel and I have been in chambers discussing this since I have first been aware of it, or shortly thereafter. The issue what we were concerned with was whether or not she had appropriately responded when a question was asked as to whether or not she was related or – there was a general question asked, anyone related to law enforcement officers to raise their hand. It was evident from our record, and we listened to the record, some people did. We did not recall whether she was, but quite frankly, it's sort of our opinion that she did not raise her hand at the appropriate time.

The assistant district attorney then stated, "[w]ell, some of us don't have any recollection one way or the other." The trial court noted that a verdict had already been reached when the kinship between the juror and an employee of the sheriff's department was brought to the court's attention. Thus, the trial court declined to substitute an alternate juror. Defendant moved the trial court to declare a mistrial, and the trial court denied Defendant's motion. After the jury read its verdict of guilty, the trial court excused the jury except for the jury foreperson. The trial court questioned the jury foreperson as follows:

[Trial court]: Ms. Sampson, there's been a situation come up that I just need to ask you about. We had, in our initial process of selecting a jury, there had been some questions as to – did you raise your hand to any, response to any question?

[Ms. Sampson]: Yes.

[Trial court]: What questions did you raise your hand in response to?

[Ms. Sampson]: (Brief pause) Uh . . . I think it had something to do with law enforcement.

[Trial court]: Okay. Do you remember the exact question?

[Ms. Sampson]: Did we know anyone that was in law enforcement?

[Trial court]: Yes, Ma'am.

[Ms. Sampson]: Yes.

-3-

[Trial court]:        Okay.  Did you raise your hand to that question?

[Ms. Sampson]:        Yes.

[Trial court]:        Okay, okay.  (Brief pause) There have been some discussion as well called to my attention that you went to the jail yesterday and had lunch with your mother, I believe, who works for the sheriff's department?

[Ms. Sampson]:        Yes.

[Trial court]:        Is that – did you do that?

[Ms. Sampson]:        Yes, I did.

[Trial court]:        Okay.  But did you raise your hand on the question –

[Ms. Sampson]:        Yes, I did.

[Trial court]:        – that was asked?  Did you – were you related to someone or knew someone, and you did raise your hand.

[Ms. Sampson]:        Yes.

              * * * *

[Defense counsel]:    Who is your relative in the sheriff's department?

[Ms. Sampson]:        Mary Stanley.

[Defense counsel]:    Okay.  And as we all know, she is a sergeant, right?

[Ms. Sampson]:        Yes.

[Defense counsel]:    Okay.  Did you have lunch down there?

[Ms. Sampson]:        I – yes, I did.

              * * * *

[Trial court]:        And I guess in an abundance of caution, Ms. Sampson, I also need to ask you – when you had lunch with your

-4-

> mother yesterday, did you and she discuss anything about the case that was for trial?
>
> [Ms. Sampson]:       No, I did not.

The trial court also questioned the jurors seated to the right and left of Ms. Sampson. Both jurors told the trial court that they did not remember whether Ms. Sampson raised her hand in response to any question during *voir dire*. Defendant again moved the trial court to declare a mistrial on the grounds that an appearance of impropriety arose when the jury foreperson had lunch at the jail during the trial. The trial court denied the motion and approved the jury's verdict.

Defendant filed a "Motion for New Trial or a Mistrial." The record on appeal includes Defendant's motion for new trial wherein Defendant sought relief from his conviction on the grounds that the jury foreperson failed to disclose during *voir dire* that she was related to an employee of the Monroe County Sheriff's Department and that an appearance of impropriety was created by the fact that she ate lunch with her family member at the jail during the trial. The record on appeal does not contain a transcript or statement of the evidence of the hearing on the motion for new trial. The record contains an order dismissing the motion, in which the trial court finds "that the motion is not well taken and that the same should be overruled."

In the absence of a transcript, we must normally presume that the evidence or lack thereof supports the trial court's denial of a new trial on this ground. *State v. Taylor*, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983). From the record before us, however, we can conclude that the trial court properly denied Defendant's motion for mistrial and motion for new trial.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. *State v. Smith*, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. *State v. Brown*, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000). The burden is on the defendant to establish a prima facie case of juror bias or partiality. *State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). There is a presumption of prejudice if a juror willfully conceals or fails to disclose information on *voir dire* which reflects on the juror's lack of impartiality. *Id.*

Defendant contends that the jury foreperson, Audrey Sampson, should have been disqualified *propter affectum*. Juror disqualifications based on *propter affectum* exist due to some bias, prejudice, or partiality toward one party in the litigation actually shown to exist or presumed to exist from circumstances and may be challenged after the return of the jury verdict. *Akins*, 867 S.W.2d at 355.

There is no evidence that Ms. Sampson concealed the fact that she is related to an employee of the sheriff's department. To the contrary, the record indicates that Ms. Sampson disclosed the relationship. From the incomplete record, we glean that defense counsel asked the jurors during *voir dire* whether any of them had "any kinfolk, either by blood or marriage, to people who work for law

enforcement, who are perhaps police officers of sheriff's deputies?" There was no audible response. Upon questioning by the trial court, Ms. Sampson told the trial court that she had raised her hand when asked by defense counsel whether any of the jurors were related to a law enforcement officer.

The State argues that Defendant has failed to show that he was prejudiced. The State relies upon *State v. Taylor*, in which a panel of this Court held "that the alleged relationship of jurors to people connected with law enforcement, even if true, does not give rise to an inherently prejudicial situation in and of itself." 669 S.W.2d at 699. Defendant has not shown actual bias or partiality on the part of juror Audrey Sampson. Defendant is not entitled to relief on this issue.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE