FILED
02/15/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2024

## STATE OF TENNESSEE v. BRANDON R. RICHARDSON

**Appeal from the Circuit Court for Rutherford County**
**Nos. 2020-CR-83693, 2019-CR-82705   Howard W. Wilson, Chancellor**

_____

## No. M2022-01675-CCA-R3-CD

_____

Brandon R. Richardson, Defendant, was convicted by a jury of two counts of vehicular assault, one count of felony reckless endangerment, misdemeanor reckless endangerment, evading arrest, driving under the influence, driving without a license, and a violation of the open container law.  In a motion for new trial, Defendant argued that the trial court erred in overruling his challenge to multiple members of the jury pool for cause.  The trial court denied the motion for new trial.  Defendant sought an untimely appeal; this Court waived the timeliness requirement.  On appeal, Defendant challenges the trial court's decision to deny Defendant's challenge for cause to members of the jury pool.  After a review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Alexander White, Nashville, Tennessee, for the appellant, Brandon R. Richardson.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Ashley Chisum-Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Because this appeal deals solely with a jury selection issue, the underlying facts giving rise to Defendant's convictions will be only briefly addressed in our opinion.  The Rutherford County Grand Jury indicted Defendant in January 2020 for two counts of

vehicular assault, one count of felony reckless endangerment, one count of misdemeanor reckless endangerment, one count of evading arrest, one count of driving under the influence, one count of driving without a license, and one count of violation of the open container law. These charges stemmed from a high-speed pursuit of Defendant's vehicle which ended with a collision with another vehicle in the eastbound lanes of Interstate 24 on September 6, 2019, during which the passengers in the second vehicle were injured.

The case proceeded to trial. During voir dire, as is typical, the trial court asked potential jurors several preliminary questions. Then, counsel for the State questioned the jury pool. When it was counsel for Defendant's opportunity to question the jury pool, counsel sought to explore potential jurors' thoughts and feelings about a defendant's decision not to testify.

After questioning several individual jurors, counsel for Defendant noted that it:

[s]ounds like we've sort of got a couple of different opinions, sort of spanning a range. One part of it is, A, doesn't really honestly make much of a difference to me. The other is, you know it kind of does because I personally - - if I was in that situation, I would want to testify and I think that says something if a person chooses not to testify.

So we've got those two and then we've got a third one which is honest like, I can't 100 percent say one way or the other. I feel like I can't tell you for sure one way or the other without hearing the evidence first. So for anyone that feels that it doesn't make a difference to them one way or the other - - we were talking to [a female potential juror] about that and we were talking to also [a male potential juror] - - for anyone that feels that way, could you please raise your hands and keep them up until I say your name.

Most of the jury pool agreed that a defendant's silence is not indicative of guilt; however, the remaining members of the jury pool were either not sure how they would view a defendant's silence or thought a defendant's silence would be incriminating. By a show of hands, the trial court noted that "75 percent of the jury just raised their hands" to indicate that it did not make a difference to them one way or the other if a defendant testified. The trial court expressed concern about getting a "jury picked before lunch," encouraging counsel for Defendant to "handle it as a group" for efficiency. The trial court explained to counsel that he did not want counsel to "ask 30 people individually that same questioning you've been asking." Counsel agreed and informed the trial court he was "going to try to mark down their names." Counsel then asked jurors for a show of hands and read 25 potential juror names aloud, indicating that they raised their hand in response

to the above question by counsel for Defendant or they could not say whether it made a difference to them one way or the other if Defendant testified.

Counsel for Defendant then challenged "for cause" all potential jurors who "either didn't know how they would feel - - or didn't feel comfortable committing to the idea that they would be okay with [Defendant] not testifying or they potentially felt that they would need [Defendant] to testify. . . . So the people that did not raise their hands." The State commented that "those are what a [peremptory] challenge is for[,] not a strike for cause" because "[n]othing about that says they can't be fair in their assessment of the case." The trial court denied the challenges for cause, telling counsel that he would "have to exercise [his] peremptories for those individuals."

Counsel for Defendant then challenged two members of the jury pool for cause, whose challenges were unrelated to their responses to the question. According to the exhibit included in the technical record, the State exercised five peremptory challenges.[1] Only one of the peremptory challenges exercised by the State was of a potential juror who did not raise his or her hand in response to counsel for Defendant's question about Defendant's decision to testify. Defendant exercised ten peremptory challenges. Of those ten, six challenges were of potential jurors who did not raise their hand in response to counsel for Defendant's question. On the peremptory challenge form, counsel for Defendant hand-wrote the following, "Jury acceptable, maintain prior objection for cause for record." The trial court instructed seven potential jurors to be seated in the jury box and designated two alternate jurors. Defendant did not testify at trial.

Defendant was convicted as indicted and sentenced to an effective sentence of 16 years, to be served consecutively to sentences from "Davidson and Williamson counties." In a motion for new trial, Defendant argued that the trial court erred in denying his "challenge for cause to multiple members of the jury pool." The trial court held a hearing on the motion.

At the hearing, counsel for Defendant did not present any witnesses. Counsel admitted to the trial court that he did not "have a list with [him] of the jurors that ultimately did end up sitting on [the jury]." The trial court noted that it "would be important [information] today for me to make a decision on which jurors made it to the jury" and that "[i]f none of them made it on the jury[,]" the issue was likely moot. Counsel for the State interjected that she had examined the transcript and determined that "[t]here were four people that were on the jury that deliberated, who did not raise their hand." Counsel for the State also argued "that each juror was polled at the end of the trial. They said this was their unanimous verdict. And there's been no showing that they were unable to be fair."

---

[1] The State's brief alleges that the State exercised four peremptory challenges.

Counsel for Defendant argued that he used his peremptories to strike potential jurors who did not raise their hands, but "it was not possible to strike all the people that had not raised their hand using [his] peremptories. And certainly not to still also have peremptories used for others." The trial court took the matter under advisement.

In a written order, the trial court denied relief. The trial court noted that "the Defendant did not provide in his written motion any details concerning the particular jurors to whose presence he objected. The Defendant also did not provide any law that would aid the court in considering his argument." The trial court further found "the Defendant used all ten of his preemptory challenges after the court denied his for-cause challenge of all prospective jurors who did not raise their hands when prompted by defense counsel" and that "[t]he record reflects that the Defendant exercised nine of those ten peremptories on potential jurors who did not raise their hands." The trial court ultimately concluded that Defendant failed to show that the four jurors who ended up on the jury were biased or prejudiced against him, noting that a "wide range of opinions" were possible between categories of potential jurors that were challenged for cause. The trial court suggested that additional questioning could have revealed if a potential juror was "unequivocally" influenced by "a defendant's choice not to testify" resulting in a dismissal of that potential juror for cause. The trial court noted that uncertainty "without further examination has not demonstrated bias or prejudice that shows an unfitness to serve," and that counsel's failure to "pursue such follow-up questions" failed to establish bias or prejudice.

Defendant filed an untimely notice of appeal, but this Court waived the timely filing of the notice of appeal.

*Analysis*

On appeal, Defendant argues that "[trial] counsel properly argued to strike multiple jury members for cause, and the Court improperly denied that those members be struck." Specifically, Defendant argues that when the trial court told Defendant he would "have to exercise your peremptories for those individuals" who did not raise their hands, the trial court "prevented [Defendant] from having a constitutional jury pool and abused its discretion by applying an incorrect legal standard, as well as reaching an illogical or unreasonable decision by failing to strike jurors for cause." The trial court's refusal to allow counsel to remove those jurors for cause allowed jurors to remain on the jury who admitted "they would not be able to follow the law" regarding Defendant's decision to testify. The State, on the other hand, argues that Defendant "failed to show a deprivation of his right to a fair and impartial jury" because he waived the claim by failing to "exhaust his peremptory challenges against the objectionable jurors." The State also argues if the claim is not waived, the trial court did not abuse its discretion because there was no

evidence that the jury was biased or prejudiced where Defendant failed to ask follow-up questions and presented no proof of bias or prejudice at the hearing on the motion for new trial. We agree with the State.

The Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee criminal defendants the right to trial by an impartial jury. Specifically, every defendant is guaranteed "'a trial by a jury free of . . . disqualification on account of some bias or partiality toward one side or the other of the litigation.'" *State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993) (quoting *Toombs v. State*, 270 S.W.2d 649, 650 (Tenn. 1954)). During the jury selection process, voir dire serves the essential purpose of allowing questioning of potential jurors regarding their qualifications, backgrounds, associations, and experiences to reveal any potential biases and to allow counsel to intelligently exercise any challenges. *See Smith v. State*, 357 S.W.3d 322, 347 (Tenn. 2011) (quoting *State v. Onidas*, 635 S.W.2d 516, 517 (Tenn. 1982)); Tenn. R. Crim. P. 24(b). "'The ultimate goal of voir dire is to ensure that jurors are competent, unbiased and impartial.'" *Smith*, 357 S.W.3d at 347 (quoting *State v. Hugueley*, 185 S.W.3d 356, 390 (Tenn. 2006)).

Challenges to a juror's qualifications typically fall into two categories: proper defectum ("on account of defect") and proper affectum ("on account of prejudice"). *Carruthers v. State*, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003) (citing *Akins*, 867 S.W.2d at 355). Proper defectum challenges are "based upon general disqualifications, such as alienage, family relationship, or statutory mandate," and must be raised before the return of the verdict. *Id*. Proper affectum challenges, on the other hand, are "based upon the existence of bias, prejudice, or partiality towards one party in the litigation actually shown to exist or presumed to exist from circumstances" and may be raised after the verdict in a motion for new trial. *Id*.

Tennessee Rule of Criminal Procedure 24 states that a trial court "shall excuse that juror from the trial of the case if the court is of the opinion that there are grounds for challenge for cause." Tenn. R. Crim. P. 24(c)(1). This rule gives the trial court "the right to excuse a juror for cause without examination of counsel." *State v. Sexton*, 368 S.W.3d 371, 391 (Tenn. 2012) (quoting *State v. Hutchison*, 898 S.W.2d 161, 167 (Tenn. 1994)). A party may use peremptory challenges to strike a juror who was not excused for cause. *See* Tenn. R. Crim. P. 24(e). "However, as our supreme court has instructed, 'A defendant must not only exhaust his peremptory challenges, but he must also challenge or offer to challenge any additional prospective juror in order to complain on appeal that the trial judge's error in refusing to excuse for cause rendered his jury not impartial.'" *State v. Kiser*, 284 S.W.3d 227, 280 (Tenn. 2009) (appendix) (quoting *State v. Irick*, 762 S.W.2d 121, 125 (Tenn. 1988)). Failure to do so waives the issue on appeal. *Id*. (citing Tenn. R. App. P. 36(a)). "[T]he failure to correctly exclude a juror for cause is grounds for reversal

only if the defendant exhausts all of his peremptory challenges and an incompetent juror is forced upon him." *State v. Howell*, 868 S.W.2d 238, 248 (Tenn. 1993).

This Court reviews a trial court's determination as to the impartiality of a potential juror for abuse of discretion. *State v. Miller*, 638 S.W.3d 136, 151 (Tenn. 2021) (discussing standard of review with regard to capital cases but noting "many non-capital cases mention the abuse of discretion standard when reviewing juror challenges for cause"); *State v. Kilburn*, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989).

Our review of the record indicates that Defendant utilized all ten peremptory challenges. Counsel for Defendant argued to the trial court that he did not have enough peremptory challenges to remove all of the objectionable jurors from the pool. The record does not reveal how many people were in the total jury pool. Moreover, our review of the record reveals that Defendant only exercised six of his peremptory challenges on potential jurors counsel deemed objectionable because they did not raise their hands when questioned by trial counsel. Four of these objectionable jurors ultimately ended up on the jury. Defendant could have, but did not, argue that "an incompetent juror was forced upon him." *Howell*, 868 S.W.2d at 248. Therefore, Defendant failed to take action that was "reasonably available to prevent or nullify the harmful effect of an [alleged] error" as required by Tennessee Rule of Appellate Procedure 36(a). Accordingly, this issue is waived.

In any event, we decline to find that the trial court abused its discretion. Defendant offered no proof at the hearing on the motion for new trial, save the argument of trial counsel. Defendant conceded at the hearing that he did not know which objectionable jurors became members of the jury. The State volunteered this information, but statements of counsel are not evidence. *Trotter v. State*, 508 S.W.2d 808, 809 (Tenn. Crim. App. 1974). Moreover, counsel for Defendant could have asked the potential remaining jurors additional questions to determine whether they were biased or prejudiced against Defendant if he chose not to testify. Without this proof in the record, we decline to find that the trial court abused its discretion.

Defendant seems to suggest that the trial court somehow prevented him from seating an impartial jury by telling counsel to "exercise peremptories for those individuals." The trial court did not prevent counsel for Defendant from further questioning the jury pool but merely instructed trial counsel not to "ask 30 people individually that same question," referring to the questioning of the jurors who raised their hands, not the objectionable jurors. Defendant has not shown that the trial court abused its discretion. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____

TIMOTHY L. EASTER, JUDGE