# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 20, 2016 Session

## STATE OF TENNESSEE v. GEORGE JOSEPH RAUDENBUSH, III

**Appeal from the Criminal Court for Monroe County**
**No. 11077    Jon Kerry Blackwood, Senior Judge**
_____

**No. E2015-00674-CCA-R3-CD – Filed June 6, 2017**
_____

In his first trial, Defendant, George Joseph Raudenbush, III, was convicted of driving on a suspended license, violating the financial responsibility law, speeding, felony evading arrest, misdemeanor evading arrest, assault, and reckless endangerment. The trial court merged the misdemeanor evading arrest conviction into the felony evading arrest conviction and imposed an effective four-year sentence. On appeal, this court reversed and remanded the case for a new trial because the trial court denied Defendant his Sixth Amendment right to counsel by requiring him to proceed *pro se* at trial. *State v. George Joseph Raudenbush, III*, No. E2012-02287-CCA-R3-CD, 2013 WL 62372011 (Tenn. Crim. App. Dec. 3, 2013). In his second trial, the subject of this appeal, Defendant was convicted of driving on a suspended license, violating the financial responsibility law, speeding, felony evading arrest, misdemeanor evading arrest, assault, and reckless endangerment. The trial court again imposed an effective four-year sentence to be served on supervised probation. On appeal, Defendant raises the following issues: (1) whether the trial court erred in overruling Defendant's motion for judgment of acquittal; (2) whether the evidence was insufficient to support his convictions for felony evading arrest and assault; (3) whether the trial court erred by denying his motion for a change of venue; and (4) whether there was juror misconduct. Defendant is not entitled to relief on the issues presented. However, the trial court failed to merge the conviction for misdemeanor evading arrest with the conviction for felony evading arrest. We therefore remand the convictions for merger. In all other respects the judgments are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgments of the Criminal Court Affirmed as Modified; Remanded

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee (on appeal) and C. Richard Hughes, Jr., District Public Defender; Donald Leon Shahan and Abby Burke, Assistant Public Defenders, (at trial) for the appellant, George Joseph Raudenbush, III.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Stephen Davis Crump, District Attorney General; and Paul Rush, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

*State's Proof*

On December 30, 2010, Sergeant Brian Millsaps of the Tellico Plains Police Department was patrolling and "running" radar on Highway 68. Auxiliary Officer April Shaffer was riding with him at the time. Sergeant Millsaps testified that the speed limit on Highway 68 was forty-five miles per hour. At some point, as they were driving toward Coker Creek, Sergeant Millsaps and Officer Shaffer met Defendant's vehicle which Sergeant Millsaps estimated to be travelling over the speed limit. Sergeant Millsaps testified that he is trained to observe a vehicle and to estimate its speed. His radar unit verified that the vehicle was travelling fifty-seven miles per hour, which was twelve miles over the posted speed limit. Sergeant Millsaps turned around, activated his blue lights, and got behind Defendant's vehicle to initiate a traffic stop. Defendant pulled over, and Sergeant Millsaps noticed that Defendant's license plate read: "Luke 4:18." He could not tell from which state the plate was registered. Sergeant Millsaps noted that the stickers on the license plate were not real. He said that there were also stickers on the plate that read: "Basieia Ouranos." The plate showed that it was issued by the "Embassyofheaven.org." Sergeant Millsaps ran a check on the license plate, and it came back as "not on file."

Sergeant Millsaps walked up to the driver's side of the vehicle, and Officer Shaffer walked up to the passenger side. Detective Travis Jones also arrived on the scene as back-up and was sitting in his truck. Sergeant Millsaps explained to Defendant why he had pulled Defendant over, and he asked for Defendant's driver's license, insurance, and registration. Sergeant Millsaps described Defendant's driver's license as follows:

> At the top, it's got "driver's license." In the upper right-hand corner it has "kingdom of Heaven." It has a photograph of [Defendant]. It has an ID number, his sex, a Baptism, an issue date and an expiration date. It has his height, weight, eye color, hair color, his name, George Joseph, III, Raudenbush, Embassy of Heaven Church. An address, I can read

- 2 -

that if you wish.  And then State of Oregon.  And then his signature at the bottom.

Sergeant Millsaps testified that the driver's license was not valid, and Defendant told Sergeant Millsaps that he was not a resident of the State of Tennessee.  He never presented the officer with a valid driver's license.  Sergeant Millsaps checked the status of Defendant's driver's license and learned that it was suspended.  He later obtained a certified copy of Defendant's driving history.

Sergeant Millsaps testified that Defendant also gave him a document that read: "vehicle title and registration record."  It indicated that it was issued by the "Embassy of Heaven," and it had an address from the State of Oregon on it.  Concerning the document, Sergeant Millsaps further testified:

> Records.embassyofheaven.org. And a phone number.  Date of report: July 31st, 2009 year of our Lord.  To whom it may concern:  May the peace and joy of Jesus Christ be with you.  And then it has a vehicle title and registration record.  Steward:  It had George Joseph, III, Raudenbush. An email - - I presume an e-mail address.  The plate number is Luke 4:18.  It's got the title number, registration date, process date, and the type of vehicle, which is the '86 Ford vehicle he was driving that night.  And then it's got:  I certify that the foregoing is true and correct based on abstract of the church vehicle record and the authority of Jesus Christ, Embassy of Heaven, Paul Revere, pastor.

Sergeant Millsaps testified that the registration was not valid in the State of Tennessee. Defendant provided a "vehicle certificate of title."  The document had a notary seal from "Embassy of Heaven."  The document read:  "Embassy of Heaven of the Kingdom of Heaven certifies that the vehicle described below has been registered in this office and that the individual stated below is the lawful steward."  There was also a registration card with the same information.

Sergeant Millsaps testified that he informed Defendant that he would be under arrest if he could not produce a valid driver's license.  When he asked if Defendant had any form of a government-issued driver's license, Defendant replied:  "I'm not a citizen of this state."  Sergeant Millsaps asked Defendant to step out of the car, and Defendant rolled up the window and locked the door.  Sergeant Millsaps then yelled at Defendant because the window was rolled up and told Defendant that he was under arrest.  At that time, Defendant put his car in drive and turned the wheel.  Sergeant Millsaps used his flashlight to knock the driver's side window out of the car.  He testified that he did not hit Defendant with the flashlight.  Sergeant Millsaps attempted to open Defendant's door but Defendant "accelerated onto Highway 68."  Sergeant Millsaps then took "evasive action" to avoid being struck by Defendant's car.  Officer Shaffer testified that the Defendant's

car nearly hit her and Sergeant Millsaps. Detective Jones pulled out behind Defendant, and Sergeant Millsaps and Officer Shaffer also began chasing Defendant. Concerning the chase, Sergeant Millsaps testified:

> I traveled what they call Coker Creek Mountain out of Tellico, which is south. Started up the mountain. Go to the top of the mountain, go another mile or so, and then there's Pond Ridge Road. It's actually two entrances on that highway off 68 loop.
>
> During all this, going up the mountain - - before we get to the mountain, there's a vehicle coming toward Tellico, meeting up. [Defendant] was not keeping in his lane. That vehicle had to go off on the right side of the highway.

Officer Shaffer testified that she also observed the vehicle go off the road and into the grass to avoid hitting Defendant's car. Sergeant Millsaps testified that the chase was not a high speed one and that it reached a speed of forty to fifty miles per hour. He said that they did not try to wreck Defendant's vehicle. At one point they tried to "box him in" but Defendant struck Detective Jones' truck before they could get "set up." Sergeant Millsaps testified that Defendant lost control of his vehicle at one point and "slid all the way, sideways, in the road." Defendant was able to keep going, and he eventually turned onto Pond Ridge Road and into a driveway. Defendant stopped the car, got out, and ran.

Sergeant Millsaps got out of his car and chased Defendant on foot. He yelled at Defendant to stop but Defendant continued running. Sergeant Millsaps eventually lost sight of Defendant. He later received information from dispatch and went to a residence. Defendant was taken out of the residence, arrested, and transported to jail.

Detective Travis Jones of the Monroe County Sheriff's Office testified that in December of 2010, he drove an unmarked, black F-150 truck. The vehicle was equipped with blue lights and sirens. On the night of December 30, 2010, Detective Jones was on his way home when he learned that Sergeant Millsaps had stopped a vehicle. He drove to the scene in order to "back him up on the traffic stop" and activated his blue lights.

Detective Jones was about to step out of his truck when he heard a loud "pop," and he saw Sergeant Millsaps "jump back." Detective Jones then realized the sound was the driver's side window breaking. Defendant drove away, and Detective Jones pulled out behind him and activated his siren. Detective Jones testified that his pursuit of Defendant lasted approximately two miles: from Highway 68 and Mecca Pike to Pond Ridge Road and Coker Creek.

Detective Jones testified that he attempted to drive around Defendant to effect a "rolling road block," but he was unable to get in front of Defendant because Defendant drove over into Detective Jones' lane and struck his truck as he was passing Defendant.

- 4 -

Detective Jones testified that he later attempted to drive around Defendant a second time. He noted that Defendant struck his vehicle a total of three times during the pursuit, "there was two times on the right side and one time on the left side of my truck." Detective Jones also testified: "There around the curve, come [sic] a van around the curve, [Defendant] actually went in their lane and forced them off into the emergency lane closer to grass." Detective Jones testified that when Defendant turned onto Pond Ridge Road, Detective Jones missed the turn, and Sergeant Millsaps got behind Defendant and continued the chase. Detective Jones turned around and drove to the residence where Defendant had parked his car and fled on foot.

*Defendant's Proof*

Gary Wayne Church testified that he is a commercial painter and knows Defendant. He learned of Defendant's arrest on December 30, 2010, and at some point went to "Robert Hamilton's," where Defendant's vehicle had been towed, and took photographs. He identified the driver's side fender of Defendant's Ford Escort and pictures of the broken window and glass in the seat. Mr. Church testified that the only damage to Defendant's car was to the driver's window. He did not see any black paint or other paint transfer on the vehicle.

On cross-examination, Mr. Church testified that he and Defendant are friends and are in a "ministry together called Appalachian Youth Ministries." He had known Defendant for ten years. Mr. Church admitted that he did not look at Detective Jones' truck. He described Defendant's car as an 80's model with a rubber bumper and no paint on the bumper. He also stated that the bumper was "very, very fragile." Mr. Church admitted that he could not tell if the car had been in an accident because he was not present at the time. He said that his vehicle was not registered in the "Kingdom of Heaven."

Joan Champion, a realtor, testified that she lives on Pine Ridge Road in Coker Creek. She has known Defendant for "maybe" six or seven years. Defendant worked as a caretaker for her sister's house in Coker Creek. On December 30, 2010, Ms. Champion had been sleeping when Defendant came to her house and asked to use the phone. She said that he seemed to be afraid and in a panic. Ms. Champion thought that she saw blood "somewhere." She thought that it may have been on Defendant's hand.

Defendant testified that on December 30, 2010, he was living on Pine Ridge Road in Coker Creek. He said that he was in a "full-time ministry as a youth missions coordinator." Defendant did not believe that he was speeding prior to being pulled over by Sergeant Millsaps. He said that when he saw blue lights, he pulled over "just before Mecca Pike, on the right-hand side" shoulder of the road. Defendant testified that he recognized Sergeant Millsaps as he approached Defendant's car because of Sergeant

Millsaps "stature and his size." He also indicated that Sergeant Millsaps was present when he had been pulled over "twice before."

Defendant testified that he presented his driver's license to Sergeant Millsaps. The license was issued by "KOH," which stands for "Kingdom of Heaven." Defendant said that "KOH" is an organization based out of Oregon. Concerning "KOH," Defendant testified: "I did some research. I called them. They referred me to the state department. I verified their credentials, and that's how I met them." Defendant said that he believed his driver's license was valid because "they had referred me to the State department and the state department confirmed what they had told me." Defendant testified that he had the "KOH" driver's license for a year, and he had been pulled over in Ranger, North Carolina, but the officer never told him the license was invalid. He said that he had also been pulled over in Decatur, Tennessee and had no reason to believe his license was invalid.

Concerning his encounter with Detective Millsaps, Defendant testified:

> After I handed Mr. Millsaps the license, he had asked for the registration card, so I handed him the registration. At that point, he'd asked me for the insurance. When I went to go for the insurance - - I have a little portfolio with my documents, and when I went to get the insurance papers, he told me to exit the vehicle.

> Because it was cold that night, I rolled up my window, and when I went to open the door, I heard a thump, and I couldn't open the door. When I looked up, I heard another - - it wasn't a thump, but it was kind of like a bang, like a noise on the window, and then that - - the first time, I didn't realize it then, but his flashlight had hit the window and bounced off. The second time, it broke the window and hit me in the head. The third time, it came in and then hit me in the face.

Defendant claimed that he gave Sergeant Millsaps everything that he requested and complied with all of his instructions. He said that he rolled his window up and attempted to open the door when Sergeant Millsaps told him to get out of the car because Defendant "assumed" that the officer was going to place him under arrest. Defendant said that he could not completely open the door because there was a "thump" that he thought was either Sergeant Millsaps' foot or hand against the door. Defendant testified that he was "pretty terrified" as Sergeant Millsaps broke the glass out of his window. He said:

> Well, after the second time, when the flashlight came through, my natural inclination was to put my hand up to protect my face. When I did that, I sustained a laceration to my hand, to my finger, and there was blood everywhere. And, at that point, I started panicking. I didn't know

what was going on. And then when I look over to the officer, he was drawing his gun.

Defendant did not remember Sergeant Millsaps saying anything at that point. Defendant said that he believed Sergeant Millsaps was going to shoot him.

Defendant testified that he was scared and, without thinking, put the car into drive and "went forward for about 50 to a hundred feet before [he] realized [he] had to turn back on the road." He said that his only concern was to "get out of that situation." Defendant testified that he never struck one of the officer's vehicles, and he did not recall seeing any other vehicles on the road that evening. He said: "I went straight to where I stayed, the house where I was maintaining the house, but we didn't have a phone in then, so I have to go to my neighbor's house next door." Defendant testified that he told Ms. Champion that he needed to immediately call the "state patrol." He then called 9-1-1. Defendant testified: "I told them that I - - that there was an attempt on my life by a police officer and I needed state patrol, that I did not want anybody from Tellico to come out or from the Monroe County Sheriff's Department." Defendant said that he called 9-1-1 a total of two times asking for help. Defendant testified that his injuries that evening consisted of glass cuts behind his ear, and he has a scar on his head "from where the flashlight hit." He said that his hands were also cut from the glass, and his blood pressure was "really high" that night.

On cross-examination, Defendant testified that the "law firm" representing him has filed a lawsuit on his behalf against the Tellico Plains Police Department and the Monroe County Sheriff's Department. He did not know the amount of money that was requested in the lawsuit.

Defendant testified that Sergeant Millsaps was lying when he said that he repeatedly asked Defendant to get out of the car. He also said that he believed his "KOH" driver's license was valid because he was not "told anything different by KOH or the state department." Defendant admitted that he obtained his "KOH" license after his government-issued license was suspended for failure to pay citations. Defendant testified that he never told the officers that he was not a resident of the State of Tennessee. He also said that Officer Shaffer was lying when she testified and demonstrated that Sergeant Millsaps "underhanded tapped the window twice" rather than an "overhand throw" as alleged by Defendant.

Defendant believed that he was not speeding before being pulled over because his car was an "older model vehicle that had high miles on it with low compression in the engine." He said that he was fortunate to "go 55 miles an hour with that vehicle." Defendant testified that the officers were lying when they said that he rolled up the window and locked the doors and that he struck Detective Jones' vehicle three times. He said that they were lying when they said that someone had to pull over onto the shoulder

of the road to get out of his way. Defendant denied being a "sovereign citizen." Defendant testified that he got the "KOH" license because "an employee of the state refused to register [their] church vehicles."

Defendant testified that he did not run from police after he pulled into the driveway. Rather, he "walked very quickly because it was dark," and there were no lights in Coker Creek. Defendant further testified: "And the graveyard between my neighbor's house and the house where I was, it's very difficult, the terrain is very bumpy and it's rocky, so I didn't run. I walked very briskly, very fast."

*State's rebuttal*

Detective Travis Jones was recalled as a witness. He testified that Defendant's vehicle struck his truck three times during the chase. Detective Jones testified that a couple of plastic pieces on the front bumper were damaged. He said that there were no major repairs to the vehicle and that "the trustees down at the jail put some screws into the bumper to hold the plastic back on it." Detective Jones testified that he and Sergeant Millsaps were also being sued by Defendant for ten million dollars.

**Analysis**

*I.     Denial of Motions for a Judgment of Acquittal and the Challenge to the Sufficiency of the Evidence*

Defendant argues that the trial court erred by denying his motions for a judgment of acquittal because his convictions for evading arrest, simple assault, and reckless endangerment were based on the fruits of an unlawful detention and/or arrest. Defendant further challenges the sufficiency of the evidence for his convictions for felony evading arrest and assault. He does not challenge his convictions for misdemeanor reckless endangerment, driving on a suspended license, violating the financial responsibility law, and speeding.

**A. Denial of Motions for a Judgment of Acquittal**

A motion for judgment of acquittal raises a question of law for the trial court's determination. *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence. *State v. Blanton*, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996). Appellate courts are ill-suited to assess whether the verdict is supported by the weight and credibility of the evidence. *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995). Thus, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Accordingly, the standard by which

the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction. *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013).

Rule 29 of the Tennessee Rules of Criminal Procedure provides as follows:

> Grounds for Judgment of Acquittal – On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(b). "This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the [S]tate rests or at the conclusion of all the evidence." *State v. James*, 315 S.W.3d 440, 455 (Tenn. 2010) (citing *Overturf v. State*, 571 S.W.2d 837, 839 & n.2 (Tenn. 1978)).

After the close of the State's proof in this case, defense counsel argued that anything that occurred "after driving without a license, violation of registration and speeding, is the fruit of an unlawful arrest." He further argued that the charges against Defendant "including the felony evading arrest, the assaults, and the reckless endangerment, be dismissed at this point, and we will continue the trial with the others." Defendant's counsel had asserted that Sergeant Millsaps intended to arrest Defendant before Defendant fled rather than issue a citation as mandated by T.C.A. § 55-10-207. The trial court made the following findings:

> So the distinction about whether or not this officer was going to arrest him or whether he knew he was going to arrest him or whether he had probable cause to arrest him or whether he was going to issue a citation for him is all argument.
>
> The question is he's supposed to stop. And if he doesn't stop, he's evading arrest. And even though he stopped, he did not allow the officer to complete his business.
>
> So the motion on those grounds is overruled.

At the close of the proof, defense counsel said: "Also, I do want to renew my motion for judgment of acquittal, and I have a different way of arguing it from the last time that I do want to bring up to the Court. We may want to do that in a jury-out." Defense counsel further argued:

- 9 -

Well, the Court ruled previously that the defendant was already in custody, or at least detained during the stop. Well, that same statute discusses continued custody as well, not just necessarily initially placing him in custody, but continuing to keep him in custody. That a citation in lieu of continued custody, it's what the police officer shall do.

Well, if the Court is of the opinion, and I might argue that the defendant was in custody at the moment of the stop, then - - or at least detained at the moment of the stop, then that law should continue at that point. All the officer knows he's done is violation of registration, speeding and no license. At that point, the stop should have ended, a citation should have been issued in lieu of continued custody, rendering anything that happens afterward the fruit of an unlawful continual [sic] of the arrest.

The trial court again overruled Defendant's motion for judgment of acquittal.

Defendant's argument should have been raised pretrial in a suppression motion. As pointed out by the State, Defendant did not file a pretrial motion to suppress this evidence nor did he object to the admission of the evidence at trial. A motion to suppress *must* be made prior to trial. By failing to file a motion to suppress before trial, a defendant waives the objection. Tenn. R. Crim. P. 12(f)(1). Furthermore, Tenn. R. App. P. provides: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. Evid. 103(a)(2) also provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and . . . [i]n the case the ruling is one excluding evidence, the substance of the evidence and the specific ground of objection . . ." When there is no objection to testimony, "it may be properly considered and given its natural probative effect as if it were in law admissible." *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn. 1981). Therefore, this issue is waived.

Defendant is not entitled to relief on this issue.

### B. Sufficiency of the Evidence

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d

926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences drawn therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

First, Defendant challenges his conviction for felony evading arrest. Tennessee Code Annotated section 39-16-603 provides, in relevant part that "it is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1). If "the attempt to elude creates a risk of death or injury to innocent bystanders or other third parties . . . a violation [of this statute] is a Class D felony." *Id.* § 39-16-603(b)(3). We initially point out that Defendant was convicted of both felony and misdemeanor evading arrest. Although not raised as an issue by Defendant, the trial court failed to merge these two convictions thus violating the double jeopardy clause of the Tennessee Constitution. *State v. Williams*, No. W2008-02730-CCA-R3-CD, 2010 WL 1172206, at *4 (Tenn. Crim. App. Mar. 26, 2010). We therefore remand for merger.

In a light most favorable to the State, the proof shows that Sergeant Millsaps and Officer Shaffer pulled Defendant over for speeding. Defendant produced an invalid driver's license and registration, and Sergeant Millsaps learned that Defendant's government-issued driver's license was suspended. When Sergeant Millsaps told Defendant that he was under arrest if he could not produce a valid driver's license, Defendant replied that he was not a citizen of the State of Tennessee. Sergeant Millsaps asked Defendant to step out of the car, and Defendant rolled up his window and locked the door. Sergeant Millsaps yelled at Defendant because the window was rolled up and told Defendant that he was under arrest. Defendant then put his car in drive and turned the wheel. Sergeant Millsaps used his flashlight to knock the driver's side window out of the car, and he attempted to open the car door, but Defendant then "accelerated onto Highway 68." Detective Travis Jones, who had arrived on the scene for back-up, pulled out behind Defendant, and Sergeant Millsaps and Officer Shaffer also began chasing Defendant. During the chase, all three officers testified that Defendant at one point was not driving in his lane of traffic and caused an oncoming vehicle to veer off the road and into the emergency lane near the grass to avoid colliding with Defendant. Thus, the evidence presented at trial was sufficient to support Defendant's conviction for felony evading arrest. As to his charge of felony evading arrest, Defendant contends that he fled the scene due to necessity because he believed that he was in imminent danger from

Sergeant Millsaps because the officer broke out the window of his car and that the officer started to draw his weapon, and Defendant feared the officer would shoot him. The jury heard this evidence and chose to reject it as was their prerogative. This issue is without merit.

Next, Defendant contends that the evidence was insufficient to support his conviction for assault. A person commits assault when he or she intentionally or knowingly causes another to fear imminent bodily injury. T.C.A. § 39-13-101(a)(2). Defendant seems to argue this issue as it applied to Detective Travis Jones and Defendant's striking of his vehicle. However, the indictment indicates that the victims of this offense are Sergeant Brian Millsaps *and* Officer April Shaffer. Listing two victims in a count charging an assault charge is unusual, as normally a separate assault charge is appropriate for each person. However, Defendant has not presented any issue regarding this, and we decline to address an issue not presented. The proof shows that Sergeant Millsaps and Officer Shaffer were standing on either side of Defendant's car when Defendant turned his wheel and later accelerated onto Highway 68. Sergeant Millsaps testified that he took "evasive action" to avoid being struck by Defendant's car. He specifically said that he feared Defendant's car would strike him. Officer Shaffer also testified that the Defendant's car nearly hit her and Sergeant Millsaps. Furthermore, as pointed out by the State, Defendant was aware of the Officers' positions in relation to his vehicle because they had been talking to Defendant before he fled the scene, and Sergeant Millsaps had broken the window out of Defendant's car and was trying to open the door when Defendant drove away. Therefore, a reasonable juror could infer that Defendant knew his actions would cause the two officers to fear imminent bodily injury. Defendant is not entitled to relief on this issue.

According to the record, Defendant was also convicted of misdemeanor reckless endangerment with the victims being Sergeant Millsaps and Detective Travis Jones. Defendant does not appear to challenge the sufficiency of the conviction for reckless endangerment.

## II. *Denial of Motion for a Change of Venue*

Defendant challenges the trial court's denial of his motion for a change of venue, which Defendant asserts denied him a fair and impartial jury.

A criminal offense is to be prosecuted in the county where it was committed, Tenn. R. Crim. P. 18(a), but the trial court should order a change of venue "when a fair trial is unlikely because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a). The Rule requires the movant to attach affidavits detailing the facts which constitute undue excitement. Tenn. R. Crim. P. 21(b).

A motion for a change of venue addresses itself to the trial court's sound discretion, and the trial court's decision will not be reversed absent abuse of discretion. *State v. Howell*, 868 S.W.2d 238, 249 (Tenn. 1993). "Mere exposure to news accounts of the incident does not, standing alone, establish bias or prejudice." *State v. Crenshaw*, 64 S.W.3d 374, 386 (Tenn. Crim. App. 2001). A court will not presume unfairness based on the quantity of publicity unless the trial atmosphere is "utterly corrupted by press coverage." *Crenshaw*, 64 S.W.3d at 387 (quoting *Dobbert v. Florida*, 432 U.S. 282, 303, (1977)). A juror who possesses knowledge of the facts of the case may still be qualified to serve on the panel so long as the juror can demonstrate that he or she will put aside prior knowledge and will decide the case based on the evidence presented at trial. *State v. Rogers*, 188 S.W.3d 593, 621 (Tenn. 2006) (appendix). "The mere fact that jurors have been exposed to pre-trial publicity will not warrant a change of venue." *State v. Mann*, 959 S.W.2d 503, 532 (Tenn. 1997) (appendix). Instead, the "defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him." *State v. Evans,* 838 S.W.2d 185, 192 (Tenn. 1992).

The factors which a trial court should consider in deciding whether to grant a change of venue include:

> the nature, extent, and timing of pretrial publicity; the nature of the publicity as fair or inflammatory; the particular content of the publicity; the degree to which the publicity complained of has permeated the area from which the venire is drawn; the degree to which the publicity circulated outside the area from which the venire is drawn; the time elapsed from the release of the publicity until the trial; the degree of care exercised in the selection of the jury; the ease or difficulty in selecting the jury; the venire persons' familiarity with the publicity and its effect, if any, upon them as shown through their answers on voir dire; the defendant's utilization of his peremptory challenges; the defendant's utilization of challenges for cause; the participation by police or by prosecution in the release of the publicity; the severity of the offense charged; the absence or presence of threats, demonstrations, or other hostility against the defendant; the size of the area from which the venire is drawn; affidavits, hearsay, or opinion testimony of witnesses; and the nature of the verdict returned by the trial jury.

*State v. Sexton*, 368 S.W.3d 371, 387 (Tenn. 2012) (citing *Rogers,* 188 S.W.3d at 621-22 (appendix) (citing *State v. Hoover,* 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979))).

Here, Defendant filed a pretrial motion arguing that a number of factors set forth in *State v. Hoover*, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979) applied to his case. Specifically, Defendant argued that he was "publicly displayed before the media after

- 13 -

being convicted before the trial and placed in the Monroe County Buzz as a convicted criminal." This was in reference to Defendant's first trial in this case that was later reversed by this court and remanded for a new trial. Defendant further argued that due to the small population of Monroe County, a large "majority of the population reads the local media and will have knowledge of the Defendant's prior trial and the prior ruling of the Court." Finally, Defendant set forth:

> Factor 8 is relevant in that selecting an impartial jury from the limited Monroe County Jury Pool would be difficult. This is because of several factors including but not limited to the following. First, that the Defendant was already tried and convicted of the exact same offense before a Monroe County Jury. Secondly, that the Officers of the Monroe County Sheriff's Department that were the prosecutors and alleged victims in this cause have been employed in local law enforcement for several years. The Monroe County Sheriff's Department to who Deputies Brian Millsaps, April Shaffer, and Travis Jones are employees [sic], is a political entity in Monroe County possessing deep rooted familial and political contacts within the community, thus making the chances of finding an unbiased jury pool extremely unlikely.

Defendant also attached copies of several newspaper articles from the *Monroe County Buzz* concerning Defendant in this matter and in other matters.

We note that the record indicates that there was apparently a hearing held on this matter. In the order denying Defendant's motion for a change of venue, the trial court noted that the hearing on the motion included witness testimony and exhibits. However, Defendant failed to include the transcript of any hearing in the appellate record. It is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Ballard,* 855 S.W.2d 557, 560 (Tenn.1993).

In any event the record contains a transcript of voir dire and a copy of the motion for change of venue with attachments to the motion. Also, at the sentencing hearing, the trial court made the following findings in reference to Defendant's claims of ineffective assistance of counsel:

> Did you sit here and see that when we, we had about 30 to 40 jurors here, or maybe 35, and not a single one of them knew you. Do you remember that? I would have gotten my feelings hurt if I had filed a motion for a change of venue talking about know [sic] you were in this community and how hot this case was, and we had 35 people that came

- 14 -

up, 30 or 35 people came up here and not a single one of them knew anything about you, heard anything about you, knew anything at all about this case, and to now come up here and say something that there was [ ] merit in a motion for a change of venue is absolutely ludicrous. You know, why don't you grow up, man?  Nobody cared.  Nobody. This venue thing was the most ill-founded, unwarranted motion that I've seen in my life.

Defendant has failed to establish that the trial court abused its discretion in denying his motion for a change of venue.  The transcript of the voir dire proceedings demonstrates that not a single juror responded affirmatively when the trial court asked potential jurors the following questions:

My first question to you, ladies and gentlemen, is going to be this:  Have any of you heard or read anything about this case which arose back on the 30th day of December 2010 and charges [Defendant] with these offenses?  Have you either heard something about his case, or have you read something about this case, or seen anything about this case?  Do any of you know anything at all about this case?

*     *     *

Now, my second question to you is do any of - - have any of you ever heard anything about [Defendant]?  In other words, has somebody talked to you about [Defendant]?  Have you read something about [Defendant]? Have you seen maybe a picture of [Defendant]?  Do any of you have any recollection or knowledge about [Defendant]?

The transcript also contains the following:

THE COURT:    So none of you know anything at all about [Defendant], and none of you know anything at all about this case; is that correct?

(P[ro]spective jurors move their head up and down).

Throughout voir dire, the trial court and attorneys asked several other potential jurors if they knew Defendant or had read or heard anything about the case, and no potential juror responded affirmatively.   However, at some point during voir dire, the following exchange took place:

[Defense Counsel]:        Now, I want you to get a good look at [Defendant].  Everybody sitting in here, that's up here and back there,

- 15 -

does anybody know his face?  Anybody ever seen his face before at any point in any way?  It's okay if you have.  I have.  I've been looking at him for a while now.  Has anybody ever seen his face before?

P[RO]SPECTIVE JUROR EDGMON:  It was probably in the paper four years ago, but . . .

[Defense Counsel]:        It was probably in the paper four years ago?  Okay.  Can you explain that to me, what you just said?  You can sit down [Defendant].

*        *        *

P[RO]SPECTIVE JUROR EDGMON:  Well, it was probably in there if there was an arrest made or whatever.  It was probably in the paper.

[Defense Counsel]:        Back when it happened?

P[RO]SPECTIVE JUROR EDGMON:  Yes.

[Defense Counsel]:        Okay.  Did you see that in the paper?

P[RO]SPECTIVE JUROR EDGMON:  Not that I can recall, but I probably did.

[Defense Counsel]:        Okay.  But there is nothing that sticks out in your mind that you remember about it?

P[RO]SPECTIVE JUROR EDGMON:  No.  Not even the name.

Another juror believed that she had seen Defendant in her place of business.  She said that it would not affect her ability to look at Defendant's case.

Defendant has not demonstrated that any of the jurors who actually sat on his case were biased or prejudiced against him. *State v. Evans,* 838 S.W.2d 185, 192 (Tenn. 1992).  Therefore, a change of venue was not warranted in this case.  Accordingly, we conclude that the defendant is not entitled to relief on this issue.

### III.    *Juror Misconduct*

Defendant next contends that the trial court erred in denying his motion for new trial based on juror misconduct.  Specifically, Defendant contends that the jury foreman failed to disclose that he knew Sergeant Millsaps, who testified for the State.

Every criminal defendant has a constitutional right to a trial by an impartial jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also State v. Sexton*, 368 S.W.3d 371, 390 (Tenn. 2012). An impartial jury is one in which the jurors are "free of . . . disqualification on account of some bias or partiality toward one side or the other of the litigation." *State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993) (quoting *Toombs v. State*, 270 S.W.2d 649, 650 (Tenn. 1954)) (internal quotation marks omitted). Voir dire allows for the impaneling of a fair and impartial jury through questions that permit counsel to intelligently exercise challenges. *Id.* Full knowledge of the facts that might bear upon a juror's qualifications is essential to the intelligent exercise of both preemptory and cause challenges. *Id.* at 355. Jurors, therefore, are obligated to make "full and truthful answers . . . neither falsely stating any fact nor concealing any material matter." Id. (quoting 47 Am. Jur. 2d, Jury § 208 (1969)) (internal quotations marks omitted).

Challenges to juror qualifications generally fall into two categories - *propter defectum* or *propter affectum*. *Carruthers v. State*, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003). General disqualifications such as alienage, family relationship, or statutory mandate are classified as *propter defectum* and must be challenged before the return of a jury verdict. *Akins*, 867 S.W.2d at 355. An objection based upon bias, prejudice, or partiality is classified as *propter affectum* and may be made after the jury verdict is returned. *Id.*

When a juror willfully conceals or fails to disclose information during voir dire which reflects on the juror's lack of impartiality, a presumption of prejudice arises. *Id.* (citing *Durham v. State*, 188 S.W.2d 555, 559 (Tenn. 1945)). The presumption of bias, however, may be dispelled by an absence of actual favor or partiality by the juror. *See State v. Taylor*, 669, S.W.2d 694, 700 (Tenn. Crim. App. 1983). The defendant bears the burden of proving a prima facie case of bias or partiality. *Akins*, 867 S.W.2d at 355 (citing Taylor, 669 S.W.2d at 700).

In this case, the Defendant has failed to establish that a juror willfully concealed or failed to disclose information during voir dire which resulted in a lack of impartiality. At the Motion for New Trial hearing, the Defendant submitted an affidavit from Charles Scotty Morgan, who was "called to be a witness in a trial for [Defendant]" which stated:

> After the trial was over I left the courtroom and went downstairs. I saw Brian Millsaps coming down the stairs. I heard in a loud voice the jury foreman say, "Congratulations", to Brian Millsaps. Brian had a big grin on his face when he saw the jury foreman, people standing around the jury foreman looked toward Brian. The jury foreman went forward and met Brian after Brian came off the stairs. They both embraced with a

- 17 -

handshake then a hug.  The jury foreman initiated the embrace.  Brian patted the jury foreman on the back telling him what a good job he did.  The jury foreman congratulated Brian again.

I was completely shocked that the jury foreman would lie right in front of the judge and the court.  The jury foreman and Brian Millsaps had both known each other and were talking about family and friends.  Four or five of the men from the jury were also standing around talking to each other around where Brian and the jury foreman were talking.  I stood there shocked as they continued their conversation joking laughing together about getting the conviction against [Defendant].  Finally, after a few minutes, I decided to leave.  Brian and the jury foreman were still talking as I left.

I was born and raised here in Monroe County all my life.  I am 60 years old and have seen a lot of things.  I believe [Defendant] didn't receive a fair trial because all the lies that were told by the Monroe County Buzz but to see with my own eyes the jury foreman having been good friends with Brian Millsap's [sic], [Defendant] never had a chance to a fair trial here in Monroe County.

At the motion for new trial hearing, Sergeant Millsaps testified that he was approached by one of the jurors after Defendant's trial was over.  He said that the juror introduced himself, but Sergeant Millsaps did not recall his name.  The juror stated that he knew Sergeant Millsaps' "brother or some other acquaintance."  Sergeant Millsaps testified that the juror told him that he did a good job testifying at trial.  He did not recall the juror's exact words.  He had never met the juror before, and he did not recall if the juror said that he had previously met Sergeant Millsaps.  When asked if they talked about anything personal, Sergeant Millsaps testified:

We spoke about other things unrelated to this.  I want to say it seems like he was talking about maybe some racing or my brother deals with his friend Keith Welch, they deal in some race cars and do some racing at the track.

Sergeant Millsaps testified that the conversation occurred "downstairs near the stairway there at the restrooms."

On cross-examination, Sergeant Millsaps testified that he shook the juror's hand but he did not recall if the juror hugged him.  He said, "It's possible he might have put his arm around me."  Sergeant Millsaps thought that their conversation lasted five to ten

minutes.  He was not sure if other jurors were around when they were talking.  Sergeant Millsaps testified that the juror did not tell him anything about deliberations.

Concerning this issue, the trial court found:  "[B]ased upon the affidavit here of Mr. Morgan and the testimony by Mr. Millsaps, the Court finds that the affidavit and the testimony of Mr. Millsaps do not raise a question of any jury impropriety in this case." The Defendant has failed to prove a prima facie case of bias or partiality on the part of any juror.  This court has previously held that evidence of a "casual relationship" between a juror and a witness for the State is not alone sufficient to demonstrate bias. *State v. Furlough*, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990) (although the juror should have disclosed the acquaintance, evidence that a detective met a juror when he visited her flower shop and that the two hugged in the hall outside the courtroom was insufficient to demonstrate that the verdict was influenced by their acquaintance). Additionally, "Juror bias must be shown, not just suspected."  *State v. Hugueley*, 185 S.W.3d 356, 380 (Tenn. 2006).  Defendant is not entitled to relief on this issue.

## CONCLUSION

The convictions of felony evading arrest and misdemeanor felony arrest are affirmed, but these judgments are remanded to the trial court for merger.  In all other aspects, the judgments are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

- 19 -