IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 19, 2020 Session

## OSCAR SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 89-F-1773          Angelita Blackshear Dalton, Judge**

_____

## No. M2020-00485-CCA-R3-ECN

_____

Following a jury trial in 1990, Oscar Smith was sentenced to receive the death penalty in each of three first degree murder convictions in the Criminal Court of Davidson County. The Tennessee Supreme Court affirmed the convictions and sentences of death in *State v. Smith*, 868 S.W.2d 561 (Tenn. 1993). Mr. Smith is scheduled to be executed February 4, 2021. This appeal by Mr. Smith is from the trial court's summary dismissal of "Oscar Smith's Omnibus Request for Relief on His Jury Claims," (hereinafter "Omnibus Request"). After oral arguments and review of the briefs and the appellate record, we affirm the judgment of the trial court in part, and dismiss the appeal in part.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed in Part; Appeal Dismissed in Part**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Kelley J. Henry, Supervisory Assistant Federal Public Defender; Amy D. Harwell, Assistant Chief, Capital Habeas Unit; and Katherine M. Dix, Assistant Federal Public Defender, Nashville, Tennessee, for the appellant, Oscar Smith.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural Background

From the record and briefs it is apparent that Mr. Smith "has pursued at least one unsuccessful challenge to [Mr. Smith's] conviction[s] and [death] sentence through direct

appeal, state post-conviction, and federal habeas corpus proceedings," *see* Tennessee Supreme Court Rule 12.4.(A), which resulted in our Supreme Court setting Mr. Smith's execution date. Mr. Smith filed the Omnibus Request after the execution date was set. The Omnibus Request seeks relief under the following "procedural mechanisms potentially available in Tennessee," which we set forth as described in Mr. Smith's Omnibus Request:

- Statutory writ of error *coram nobis*

- *Bivens*-like action [*Bivens v. Six Unknown named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)]

- Motion to reopen post-conviction petition under Tennessee Code Annotated section 40-30-117

- Common law writ of *audita querela*

- A motion to correct illegal sentence pursuant to Tennessee Rules of Criminal Procedure, Rule 36.1

- Open Courts Clause of Article I, section 17 of the Tennessee Constitution

- The due process provisions in the Fifth and Fourteenth Amendments of the United States Constitution, and the law of the land provision in Article I, section 8 of the Tennessee Constitution

As to Mr. Smith's request to reopen his post-conviction petition pursuant to Tennessee Code Annotated section 40-30-117, following proper statutory procedure, Mr. Smith filed an application in the Court of Criminal Appeals for permission to appeal from the trial court's denial of the motion to reopen the post-conviction petition. *See* Tenn. Code Ann. § 40-30-117(c). The application was denied. *Oscar Smith v. State of Tennessee*, No. M2020-00493-CCA-R28-PD (Tenn. Crim. App. May 1, 2020 (order denying permission to appeal denial of motion to reopen post-conviction petition) *perm. app. denied* (Tenn. Aug. 5, 2020). Accordingly, that claim is not before this court in this case.

On page 2 of his Omnibus Request, Mr. Smith candidly acknowledges that Tennessee courts have previously interpreted his theories of procedural vehicles to present his jury claims in a manner that might foreclose relief for Mr. Smith in this

proceeding. Specifically, Mr. Smith asserts a summary of his arguments for relief in the Omnibus Request filed in the trial court as follows:

> While acknowledging that Tennessee courts have construed each of these procedural vehicles in ways that may foreclose his ability to obtain relief, he presents here every procedural vehicle of which he is aware. He respectfully requests that this Court (1) interpret at least one of these vehicles as providing an avenue for relief; (2) if none of these provide such a vehicle, create a new procedural mechanism for him to vindicate his constitutional rights; or (3) hold that one or more of these procedural vehicles are unconstitutional because it leaves him without a mechanism for him to vindicate his constitutional rights. State and federal due process and state open courts constitutional provisions require that Tennessee courts provide Mr. Smith a procedure by which he may establish his entitlement to relief for the constitutional violations that infected his capital trial.

Mr. Smith's statement of the issues in this appeal asserts that this court must determine whether one of the procedural vehicles submitted in the Omnibus Request permits adjudication of his claims regarding:

1) introduction of extraneous, prejudicial, and untrue information during the jury's deliberations;

2) deception which resulted in a juror biased against Mr. Smith being seated on the jury; and

3) "other claims of juror misconduct" – however only one such claim is alleged in the statement of issues – unsworn opinion "testimony" by a juror during deliberations.

In the alternative to granting relief to Mr. Smith pursuant to one or more of the "procedural vehicles" he has named, Mr. Smith asserts that this court should determine whether the courts must fulfill constitutional duties by "independently providing a non-statutory procedure for the adjudication" of Mr. Smith's claims.

Mr. Smith's claims derive from the contents of signed statements purportedly from three of the jurors who sat on the jury which convicted Mr. Smith of three counts of first degree murder and imposed the sentence of death for each of the three convictions. Mr. Smith asserts that each claim is based upon violations of his constitutional rights guaranteed by the United States and/or Tennessee Constitutions. The statements are not

affidavits. They are each designated as a declaration of each person, with the following sentence directly above the signature: "I, [Declarant], declare under penalty of perjury that the foregoing is true and correct." In order to protect the identity of each juror named in the statements, they shall be designated herein as "Juror A," "Juror B," and Juror C." Juror A's statement is dated in handwriting as "11-22-2019;" Juror B's is dated in handwriting as "11-25-19;" and Juror C's is dated in handwriting as "12-1-19."

All three statements are typed. The statements of Juror A and Juror B have no changes to what was typed. However, Juror C's statement contains handwritten changes initialed with Juror C's initials. There is nothing in the record to disclose who interviewed the people who signed the statements, who typed the statements, the amount of time between any interview and the signing of the statements, the method(s) of the interviews (by phone, in person, etc.), or why it took almost thirty years after Mr. Smith's trial for the jurors' statements to be obtained. Also, since the statements are not notarized, there is nothing authenticating the identification of the persons who signed the statements. There is nothing in the record disclosing when or how the statements came into possession of Mr. Smith.

We conclude that the statements should be set forth herein. Each statement has been redacted where necessary to protect the identities of the persons who signed the statements, but nothing which is redacted is relevant to the disposition of this appeal. Juror C's statement will be set forth as amended.

Declaration of [Juror A]

I, [Juror A], an adult resident of Davidson County, Tennessee, declare as follows:

1. I was on the jury that sentenced Oscar Frank Smith to death.

2. At the time I was called to serve on Mr. Smith's jury, I believed that anytime someone killed a person on purpose they should get the death penalty. That was my belief then and I still believe that today.

3. Mr. Smith's case was even worse than most murders, because it was three murders. Two of the victims were children.

4. At the time of the trial, I was [employed at a Nashville business]. My boss did not want me to be away from work. At one point, I was late for court and the Judge scolded me for being late. He told me that my boss was not the boss in his courtroom. The Judge said, "I am!" He told me I better be on time next time.

- 4 -

5. Before I was selected, the Judge talked to me in the courtroom about my views on the death penalty. When I was being questioned personally by the Judge, I felt like he did not like my answers. I was confused by what the Judge was saying to me, so I just went along with him. In fact, I have never believed a person should get a life sentence if they meant to kill someone. There was not anything Mr. Smith's lawyers could have said that would have made me change my opinion.

6. It was a tragedy how the police were called to the house, but they didn't go inside. That young boy may have still been alive.

7. Paul Newman was one of the public defenders for Mr. Smith. My brother-in-law was friends with him. They were both from the Scottsboro area outside of Nashville, TN. Mr. Newman was a police officer before he became an attorney.

I, [Juror A], declare under penalty of perjury that the foregoing is true and correct.

/s/ [Juror A]

[Juror A]

Dated: 11-22-2019

Declaration of [Juror B]

I, [Juror B], an adult resident of Davidson County, Tennessee, declare as follows:

1. I was on the jury that sentenced Oscar Frank Smith to death.

2. Thinking about this case now and knowing what I now know, I wish we had given him life in prison instead of the death penalty. I was just 30 or 31 at that time, and I believed that life in prison was just 13 years. I did not think 13 years was enough time for this crime, so I voted for death.

3. We went through the voting quite a few times. We wrote down our vote, but everyone knew who was voting against the death penalty.

4. There was a young girl who was really upset with the idea of the death penalty and electrocution. I talked to her in the jury room privately and assured her that life in prison was only 13 years. We had this conversation off to the side during

deliberation. After our discussion, she later changed her vote and the jury became unanimous as to the death verdict.

5. I really didn't think an execution would ever happen, because and I was young and naive. I would now vote for life.

6. There were some hot heads on the jury. Those men just wanted to make a quick decision and go home. I remember one or two of them had their minds made up before we even deliberated. It was clear that nothing would change their minds about giving Mr. Smith the death penalty. Those guys just wanted out of there and didn't participate in the discussion except to hurry us along.

I, [Juror B], declare under penalty of perjury that the foregoing is true and correct.

/s/ [Juror B]

[Juror B]

Dated: 11-25-2019

Declaration of [Juror C]

I, [Juror C], an adult resident of Davidson County, Tennessee, declare as follows:

1. Many years ago, I served on a jury in the case involving the prosecution of Oscar Frank Smith.

2. In explaining Mr. Smith's alibi for the crime, the defense talked about it being a foggy night and said that thick fog caused Mr. Smith to have to drive slowly. When I was in [    ] High School, I took an aerospace science class taught by the head of local civil aviation. Later, when I was in the Navy [    ], I took a similar course. From those classes, I learned about weather patterns. As I explained to the jury, I knew from my training that the wind, as reported that night, would have cleared the fog enough that a person would not have had to drive as slowly that evening.

3. Mr. Smith was found guilty of three individual murders. You automatically had to give death.

4. None of us doubted Mr. Smith was guilty, even the two alternates. We ate in the courthouse and therefore could speak about things we heard at lunch. When we were eating, the alternates could throw in their opinions. The alternates let us know they also thought Mr. Smith was guilty.

5. There were two younger [jurors] who really had a hard time voting, because they did not want to give the death penalty. One [juror] was black and one [juror] was white.

6. The [foreperson], [    ], talked to us each privately in a quiet voice, when we began deliberating. [The foreperson] talked to most of us for about three minutes, but talked to the two younger [jurors] for at least 15 minutes each privately.

7. After we all met with the [foreperson], we again met as a group. We went around the table and each gave our reasons for our vote. At some point, the two younger [jurors], who sat next to each other, changed their vote.

I, [Juror C], declare under penalty of perjury that the foregoing is true and correct.

      /s/  [Juror C]

[Juror C]

Dated:    12-1-2019

Concerning Juror A's statement relied upon by Mr. Smith in his Omnibus Request, Mr. Smith included within the pleading a transcript of a portion of the voir dire of Juror A concerning imposition of the death penalty. It states as follows:

| [Defense Counsel]: | Okay. And would the fact that there are three people killed, would that in any way inhibit you from considering life imprisonment as opposed to the death penalty? Or do you consider that any person who is convicted of three crimes or murder should receive the death penalty automatically? |
|---|---|
| Juror [A]: | If he's proven guilty, he should, yes, sir. |
| [Defense Counsel]: | Okay. So even though the Judge would instruct you that you are to weigh the factors, is it your |

- 7 -

position and are you telling the Court that if it is three murders, that you would automatically vote for the death penalty?

Juror [A]:          Yes, sir.

[Defense Counsel]:  And that would be despite whatever instructions the Judge may give you because of your personal feelings concerning this type of crime.

Juror [A]:          Yes, sir.

[Defense Counsel]:  Your Honor, at this point we'd ask that he be excused.

[Prosecutor]:       Well, Your Honor, I'd object at this point, He's already answered the question a different way.

The Court:          He answered the question already that if he thought the aggravating factors did not outweigh the mitigating factors that he would impose a life sentence. He has answered that two or three different ways. I think you need to answer the question now, [Juror A], and I understand what his question is, is whether or not, if you did not find that the mitigating – that the aggravating factors outweighed the mitigating factors, in any of the three cases involving the victim of homicide, whether or not you would follow the law and impose a life sentence in each case, or whether he would decide because there were three cases that you would automatically impose a life sentence in each case, or whether he would decide because there were three cases that you would automatically impose the death sentence or something. That's the question.

In other words, if in any one of the three cases where there are victims alleged, you thought the aggravating factors outweighed the mitigating factors you would impose the death penalty in

that particular case of that particular victim. But if in none of the cases you thought the aggravating factors outweighed the mitigating factors, then you would impose a life sentence in each of those?

Juror [A]:     Yes, sir. Yes, sir.

The Court:     And not add them up and have a cumulative --

Juror [A]:     Right.

The Court:     -- sort of a --

Juror [A]:     Yes, sir.

The Court:     -- finding? Do you understand the point I'm making?

Juror [A]:     Yes, sir.

The Court:     All right. Now, understanding that, I'm not trying to interject my question into [Defense Counsel's], but I thought based on your earlier answers you may have misunderstood them. If you had, say, Victim A, and you found that the aggravating circumstances did not, beyond a reasonable doubt, outweigh the mitigating circumstances in that case, what would your sentence be?

Juror [A]:     Life.

The Court:     If you had Victim B, and you thought the aggravating factors did not outweigh beyond a reasonable doubt the mitigating factors as to the victim, what would --

Juror [A]:     that would be life.

| | |
|---|---|
| The Court: | -- your verdict be? And as to Victim C, if you found that the aggravating factors did not beyond a reasonable doubt outweigh the mitigating factors, what would your verdict be – |
| Juror [A]: | Life. |
| The Court: | -- in that case? All right. So are you saying if factors did not outweigh – the aggravating factors did not beyond a reasonable doubt outweigh the mitigating factors, in any of the three victim's case that you would return a verdict of life in this case, assuming – |
| Juror [A]: | Yes, sir. |
| The Court: | -- that guilt is proven beyond a reasonable doubt; is that what you're saying? |
| Juror [A]: | Yes, sir. |
| The Court: | Okay. I thought that that was what he was saying, but I'll be glad to let you ask him a follow-up question, but I don't want to have [Juror A] getting maybe a little confused by your question based on what I heard him say two or three different ways in his responses to earlier questions.<br>Okay. Go ahead. |
| [Defense Counsel]: | [Juror A], I'm not trying to confuse you. And if I have, I apologize. What my question concerned was, was the – was the possibility that you may be sitting as a juror trying to decide either death by electrocution or life in prison, would the fact that there would be three victims, would that cause you to have a preconceived notion or an idea that you should vote for death by electrocution? |
| Juror [A]: | No, sir; not just because there was three. |

- 10 -

**ANALYSIS**

On January 15, 2020, our supreme court granted the State's request to set a date for Mr. Smith to be executed. The court ordered Mr. Smith to be executed by the State of Tennessee on June 4, 2020. Mr. Smith's Omnibus Request was filed February 28, 2020. The trial court summarily dismissed the Omnibus Request in an order filed March 10, 2020. On April 17, 2020, the Tennessee Supreme Court, upon motion of Mr. Smith, stayed his execution of June 4, 2020 due to the COVID-19 pandemic. The order rescheduled the execution of Mr. Smith by the Tennessee Department of Correction for February 4, 2021.

There are two distinct parts to Mr. Smith's Omnibus Request and his appeal from the trial court's summary dismissal of the Omnibus Request. The first part is comprised of allegations that Mr. Smith was unconstitutionally denied a fair and impartial trial as the result of improper juror conduct during voir dire and improprieties during and before jury deliberations. Everything that Mr. Smith relies upon in support of these allegations is contained in the statements of Jurors A, B, and C. For clarity we will refer to all of Mr. Smith's assertions of violations of his constitutional rights, based upon the three statements, as his substantive claims. It does not matter how meritorious the substantive claims may be unless there is a procedural mechanism for the substantive issues to be addressed by a Tennessee court at this late date, thirty years after his convictions. Thus, the other part of Mr. Smith's Omnibus Request is his arguments that: (1) either one or more of the procedural vehicles he names allows a court to address his substantive claims, or (2) if not, the trial court or this court must fulfill "constitutional obligations by independently providing a non-statutory procedure for the adjudication of Mr. Smith's constitutional claims." (Mr. Smith's brief, p. 1).

We must respectfully decline to attempt to create a non-statutory procedure to address Mr. Smith's substantive claims. As an intermediate appellate court, we lack the authority to create a heretofore non-existent procedural mechanism to address the merits of Mr. Smith's substantive claims. *See* Tenn. Code Ann. § 16-5-108 (stating the jurisdiction of the Court of Criminal Appeals); Tenn. Code Ann. § 16-3-402 (granting the supreme court the authority to prescribe rules of practice and procedure). Accordingly, we will only review whether any of the procedural mechanisms asserted by Mr. Smith in his Omnibus Request allows a Tennessee court to address his substantive claims at this time.

*I. Writ of Error Coram Nobis*

Mr. Smith argues that the substantive claims can be addressed pursuant to the statutory writ of error *coram nobis*. He makes a short argument in his appellate brief in

support of using a petition for writ of error *coram nobis* as a procedural vehicle. He asserts the evidence contained in the juror statements is newly discovered, the court proceedings might have been different if the statements had been discovered earlier, it is not Mr. Smith's fault the statements were not discovered earlier, and the one year statute of limitations for filing a petition for writ of error *coram nobis* should be tolled on due process grounds pursuant to *Workman v. State*, 41 S.W.3d 100, 101-104 (Tenn. 2001). Mr. Smith argues in his brief on appeal that the statements of Jurors A, B, and C constitute "proof that the jury that convicted and sentenced Mr. Smith to death violated his constitutional rights" to a fair and impartial jury. In its brief, the State argues that the writ of error *coram nobis* is not appropriate for remedying violations of a defendant's constitutional rights. We agree with the State. In *Nunley v. State*, 552 S.W.3d 800 (Tenn. 2018), our supreme court held that "an error *coram nobis* proceeding is not the appropriate procedural vehicle for obtaining relief on the ground that the defendant suffered a constitutional due process violation under *Brady [v. Maryland*, 373 U.S. 83 (1963)]." *Nunley*, 552 S.W.3d at 819. The court concluded that a post-conviction proceeding is the proper procedural vehicle to seek relief for a *Brady* violation. Also in *Nunley*, the court specifically clarified that the writ of error *coram nobis* is not a procedural mechanism to remedy violations of constitutional rights. *Id.* at 829 n. 22. Thus, Mr. Smith is not entitled to present his substantive constitutional issues by writ of error *coram nobis*.

The State also argues that Mr. Smith's effort to have his substantive issues addressed in a petition for writ of error *coram nobis* is barred by the applicable one year statute of limitations in Tennessee Code Annotated section 27-7-103, and Mr. Smith is not entitled to have the statute of limitations tolled. We agree with the State. As noted above, remedying any deprivation of constitutional rights is not cognizable in an error *coram nobis* proceeding. *Nunley*, 552 S.W.3d 800, 823 n. 22 (Tenn. 2018). When a petitioner raises only non-cognizable claims in a petition for writ of error *coram nobis*, the petitioner is not entitled to tolling of the statute of limitations. *Id.* at 831; *State v. Sutton*, No. E2019-01062-CCA-R3-ECN, 2020 WL 703607, at *4 (Tenn. Crim. App. Feb. 11, 2020) *perm. app. denied* (Tenn. Feb. 14, 2020). Furthermore, the facts detailed in the three statements are not the type of admissible evidence which is applicable to error *coram nobis* claims. If taken as absolutely true, evidence of juror misconduct set forth in the statements would not be relevant to the issues of Mr. Smith's guilt or innocence or to the existence of aggravating and mitigating factors for sentencing. At most, if the conduct of the jurors had timely come to the attention of the trial court during or after trial, a mistrial or a new trial, respectively, would have been the available remedies, not an acquittal or a sentence of life imprisonment. By the explicit language in the statute that authorizes *coram nobis* relief, the newly discovered evidence must relate "to matters . . . *litigated at the trial* if the judge determines that such evidence may have

- 12 -

resulted in a *different judgment*, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(b) (emphasis added). *See Nunley*, 552 S.W.3d at 831.

Mr. Smith is not entitled to relief on his issue that a petition for writ of error *coram nobis* is an available procedural vehicle to present his substantive claims.

## II. *Tennessee Rule of Criminal Procedure 36.1*

Tennessee Rule of Criminal Procedure 36.1 provides to a defendant a method to request correction of an unexpired illegal sentence. At the time Mr. Smith's offenses and convictions occurred, execution was a statutorily legal sentence for first degree murder. *See* Tenn. Code Ann. § 39-2-203 [now § 39-13-204]. Accordingly, the death sentences imposed upon Mr. Smith were authorized by statute and did not directly contravene an applicable statute. Therefore, the sentences of death are not illegal pursuant to Rule 36.1. *See State v. Wooden*, 478 S.W.3d 585, 595 (Tenn. 2015). In his brief, Mr. Smith makes arguments that have been rejected by our supreme court. Essentially, Mr. Smith argues that his death sentences are illegal because of the methodology used to impose the sentences of death: the jurors who deliberated and reached the verdicts denied Mr. Smith of his constitutional right to a fair and impartial jury. In *Wooden*, the Court determined the meaning of "illegal sentence" as that term is used in Rule 36.1. *Id*. at 587. In its analysis, the court set forth three types of sentencing errors. *Id*. at 595. The first is a clerical error, which occurs as a result of a mistake filling out the judgment document, and these can be corrected at any time pursuant to Tennessee Rule of Criminal Procedure 36. Second is the appealable error, from which an appeal as of right from a judgment is authorized. The court stated that appealable errors "generally involve attacks on the correctness of the methodology" by which a sentence is imposed. *Id*. Finally, as to the third type of sentencing error, the fatal error, the court stated,

> The final category is fatal errors, and these errors are "so profound as to render the sentence illegal and void." *Cantrell [v. Easterling*, 346 S.W.3d 445,] 452. This category consists of any sentence "that is not authorized by the applicable statutes or that directly contravenes an applicable statute." Tenn. R. Crim. P. 36.1(a); *see also Cantrell*, 346 S.W.3d at 452. Included in this category are sentences imposed pursuant to an inapplicable statutory scheme, sentences designating release eligibility dates where early release is statutorily prohibited, sentences that are ordered to be served concurrently where statutorily required to be served consecutively, and sentences not authorized by any statute for the offenses. *Davis [v. State*, 313 S.W.3d 751,] 759.

*Wooden*, 478 S.W.3d at 595.

- 13 -

"Only fatal errors render sentences illegal." *Id*., (citing *Cantrell*, 346 S.W.3d at 452).

Mr. Smith's sentences of death by execution by the State of Tennessee were imposed by an applicable statutory scheme; the sentences of death were authorized for convictions of first degree murder; release eligibility is not applicable to a death sentence; and concurrent/consecutive sentencing was not applicable. Tennessee Rule of Criminal Procedure 36.1 does not supply a procedural vehicle to address Mr. Smith's substantive claims because the claims solely involve attacks on whether the methodology used by the trial court to impose the death sentences was correct. *See Wooden*, 478 S.W.3d 595. Accordingly, Mr. Smith is not entitled to relief pursuant to Rule 36.1.

> *III.   Claims for relief based upon <u>Bivens v. Six Unknown named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971); Common law writ of <u>audita querela</u>; Open Courts Clause of Article I, section 17 of the Tennessee Constitution; the due process provisions in the Fifth and Fourteenth Amendments of the United States Constitution, and the law of the land provision in Article I, section 8 of the Tennessee Constitution*

As to these claims for a procedural vehicle to present Mr. Smith's substantive issues, the State's only argument is that Mr. Smith's appeal as to these issues should be dismissed because this court lacks jurisdiction to address whether the trial court erred as to these claims. The State's argument is that there is no appeal as of right pursuant to any statute or in Tennessee Rule of Appellate Procedure 3(b) from the trial court's dismissal of Mr. Smith's request for relief pursuant to the four proposed procedural vehicles listed above.

A more appropriate analysis based on the State's argument would be that an appeal as of right does not explicitly exist from either a trial court's denial or granting in whole, or in part, an "Omnibus Request for Relief on a petitioner's jury claims," with the exceptions as to the included grounds in this case of: (1) petition for writ of error *coram nobis* and (2) motion to correct illegal sentences. Tenn. Code Ann. § 40-26-105(d) (allows an appeal of a writ of error *coram nobis* to this court); Tenn. R. App. P. 3(b) (allows an appeal as of right from judgment entered pursuant to Rule 36.1). The State did not address the merits of whether Mr. Smith's claims of procedural vehicles by these means was appropriate, except to note Mr. Smith's concession in his motion that "Tennessee courts have construed each of these procedural vehicles in ways that may foreclose his ability to obtain relief."

Mr. Smith does not contest this assertion in his reply brief. Instead, he focuses in his reply brief, quite correctly, that the State on appeal does not dispute Mr. Smith's assertion that his constitutional rights to a fair and impartial jury were denied. Mr. Smith concludes his reply brief by arguing he is entitled to a judicially created procedure in order to address his substantive claims.

We conclude that we are without jurisdiction to consider these claims for relief to these four listed procedural vehicles because he has no appeal as of right from the denial of relief by the trial court. Accordingly, as to these claims, the appeal must be dismissed.

Mr. Smith also argues that the trial court erred by not allowing evidence in support of his substantive claims to be presented, and relies upon the order of our supreme court in *State v. Lee Hall, a/k/a Leroy Hall, Jr.*, No. E1997-00344-SC-DDT-DD, (Tenn. Dec. 3, 2019) (Order denying stay of execution pending appeal as of right regarding biased juror). As to Mr. Hall's appeal from denial of a motion for a second post-conviction proceeding due to newly discovered evidence of a juror's bias in his death penalty case, the Tennessee Supreme Court included in its order the following: "[T]he trial court wisely recognized the due process concerns, particularly in a capital case, and allowed Mr. Hall to present evidence *on his second post-conviction petition as if it were a proper vehicle.*" *Id.* at p. 10, (emphasis added).

We have addressed on the merits Mr. Smith's contentions that the writ for error *coram nobis* and Tennessee Rule of Criminal Procedure 36.1 provide procedural vehicles for presentation of his substantive issues regarding juror improprieties. We have dismissed the appeal as to his other claims of relief for a procedural vehicle, and concluded we have no authority to create an unspecified judicial procedure to address Mr. Smith's substantive issues. No amount of testimony from the jurors, based upon what is contained in the statements, would change the results reached by this court.

In addition, our supreme court in *Leroy Hall, Jr.*, *Id.*, also noted that the trial court would have acted within its discretion to dismiss the claim for a second post-conviction proceeding without the evidentiary hearing. *Id.* at p. 10.

**CONCLUSION**

None of the procedural vehicles asserted by Mr. Smith are legally available to address his substantive claims that juror misconduct deprived him of a fair and impartial trial in violation of his rights under the United States and/or Tennessee Constitutions. The facts set forth in the three statements are disturbing if taken as true, especially the alleged facts of juror bias as set forth in Juror A's declaration. If those facts had been presented in a motion for new trial and believed by the trial court, it is possible that a new

trial would have been granted at least as to sentencing. *See State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993) ("[w]hen a juror conceals or misrepresents information tending to indicate a lack of impartiality, a challenge may be made as here in a motion for new trial.") *Id*., at 357. "The integrity of the voir dire process depends upon the venire's free and full responses to questions posed by counsel. When jurors fail to disclose relevant, potentially prejudicial information, counsel are hampered in the jury selection process. As a result, the defendant's right to a trial by a fair and impartial jury is significantly impaired." *Carruthers v. State*, 145 S.W.3d 85, 95 (Tenn. Crim. App. 2003) (Tennessee Rule of Evidence 606(b) does not prohibit a juror from testifying about whether extraneous prejudicial information was disclosed by another juror during deliberations, although the effect that the improper extraneous information had on the jurors is not admissible). However, we conclude that at this time no procedural vehicle in Tennessee courts exists for Mr. Smith to present his claims. Accordingly, the judgment of the trial court dismissing the Omnibus Request as to a request for relief via a Tennessee Rule of Criminal Procedure 36.1 motion and petition for writ of error *coram nobis* is affirmed. As to Mr. Smith's claims for relief via a "*Bivens*-like" action, common law writ of *audita querela*, the open courts clause of Article I, section 17 of the Tennessee Constitution, and due process provisions of the United States Constitution and the law of the land provision of the Tennessee Constitution, the appeal is dismissed. Furthermore, we respectfully deny Mr. Smith's request for this court to create a presently non-existent non-statutory procedural vehicle for Mr. Smith to have his substantive issues addressed on the merits. The current laws which this court is obligated to follow make the potential merit of Mr. Smith's substantive issues to be irrelevant as to whether he can have an evidentiary hearing in a state trial court.


_____
THOMAS T. WOODALL, JUDGE